Charles Franklin WHITES, Appellant,

v.

STAR ENGRAVING COMPANY, Appellee.

No. 682.

Court of Civil Appeals of Texas,
Corpus Christi.

May 11, 1972.

Rehearing Denied June 8, 1972.

Hume & Hume, David Hume, Eagle Pass, for appellant.

Head & Kendrick, Michael C. Kendrick, Jr., Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is an appeal from an order granting a temporary injunction. A former employer, the appellee, brought suit against his former employee, the appellant, to enforce a restrictive non-competitive agreement. The trial court issued a temporary restraining order enjoining the appellant directly or indirectly, for himself or as an employee of any person, firm or corporation, from selling or soliciting orders for certain merchandise in twelve South Texas counties where he worked while employed by the appellee. After a hearing, the order was continued by the entry of a temporary injunction effective until a trial is had on the merits. The order provided, however, that should there be no trial upon the merits of this cause prior to August 8, 1972, the restraint therein ordered would cease and terminate. The court stated that it was of the opinion that it was necessary to issue the temporary injunction to preserve the status quo and to prevent irreparable injury and damage to the appellee. The court filed findings of fact and conclusions of law. We affirm the judgment and order of the trial court.

The appellant was employed by appellee in July 1967. At that time the parties entered into a written contract. It had a

non-competition clause, the relevant portions of which were as follows:

"20. In the event of termination of the employment of Party of the Second Part for any reason, Party of the Second Part expressly covenants and agrees that for a period of twelve (12) months after such termination he will not directly or indirectly, for himself, or as agent of, or on behalf of, or in conjunction with, any person, firm, association or corporation, sell or deliver or solicit orders for any goods, wares and merchandise of the kind or character sold or handled by Party of the First Part during the years covered by this contract or in any other manner participate in the sale or delivery thereof within the territory described in Paragraph 24 hereof."

In the first paragraph of the contract the contract provided as follows:

"1. Party of the First Part, manufacturer of class rings, pins, invitations, personal cards, medals, diplomas, etc., hereby employs Party of the Second Part, and Party of the Second Part hereby agrees to work for and to devote his entire time and interests to Party of the First Part, for a period of five years from the date hereof, on the conditions hereinafter more fully set forth."

As to the territory involved, the contract provided that:

"24. Specific outline of territory: Same territory as assigned to J. G. Mundy—specific outline of which is on file in the offices of Star Engraving Company. Mundy agrees to release the sale and earnings from year books, band uniforms, blazers, choir robe sales with the exception of year books at Weslaco, Odem and Zapata. Mundy agrees to release the sale of all items in all Catholic schools.

Whites and Price to work year books in Miller & Flour Bluff during 1967–68 school year and share the earned sales commission 50–50—In future years Whites to receive all earned commission on these two schools provided we produce the year books."

The appellant testified that a majority of his sales and solicitations covered year books and band uniforms. On less frequent occasions he sold and solicited orders for blazers, choir robes, rings, invitations, pins and the other items listed in paragraph "1" of the employment contract. It was undisputed that the appellant, during the time that he worked for the appellee, had at one time or another sold all of such items that were listed in paragraph "1" and paragraph "24" above referred to.

The evidence showed that the appellant worked about four of the five years specified in the contract. He sent in his letter of resignation on August 9, 1971. From the date of his letter of resignation until the suit was filed two weeks later (the date the appellant was served with the temporary restraining order) appellant had accepted employment from a competitor of the appellee and had solicited and obtained business from his old customers on behalf of his new employer. He admitted that during the said two-week period he had sold rings and/or year books to at least ten schools where he had for the same school year sold the same items for the appellee. On making the new sales he brought about the cancellation of contracts with appellee or its affiliates and obtained new sales contracts for his new employer.

At the conclusion of the trial, the trial court filed findings of fact and conclusions of law. The pertinent findings are as follows:

"The Court finds that:

.    .    .    .    .    .

4. The Star Engraving Company did furnish saleable merchandise to defendant Charles Franklin Whites, although on some very few occasions the merchandise sold was not as ordered.

5. The contract between defendant Charles Franklin Whites and plaintiff defines the territory covered thereby with certainty except insofar as the Counties of Webb, Live Oak and San Patricio are concerned.

6. The contract between plaintiff and defendant Charles Franklin Whites was not executory in nature.

7. The items covered by the Court's injunction include merchandise either manufactured by plaintiff or handled or procured by plaintiff, and all such items of merchandise were at one time or another during the term of the contract sold by defendant Charles Franklin Whites.

8. Defendant Charles Franklin Whites during the term of the contract between plaintiff and defendant was an employee of Star Engraving Company and was not an employee of any other company."

The court concluded in part that:

. . . . . .

"2. Defendant Charles Franklin Whites was not forced to resign his employment but did so voluntarily.

3. The territory covered by the contract between plaintiff and defendant Charles Franklin Whites was sufficiently defined by the provisions of the contract and the outline referred to therein.

4. Defendant Charles Franklin Whites was an employee of Star Engraving Company, only."

■■ An agreement by an employee not to compete with his employer after the termination of his employment is in restraint of trade. The enforcement of such restraint can only be had where the terms are reasonable. The test for determining the validity of such a covenant, is whether it imposes upon the employee any greater restraint than is reasonably necessary to protect the business and goodwill of the employer. Weatherford Oil Tool Co. v. Campbell, 161 Tex. 310, 340 S.W.2d 950 (1960). In determining the reasonableness, it is important to consider the period of time during which the restraint is to last and the territory that is to be included.

The appellant does not attack as unreasonable the one-year restraint, but does contend in several of his points of error that the area involved is indefinite and uncertain; that the appellee failed to establish by proper proof the territory to which the restraint was applicable; and that the trial court abused its discretion in including an unreasonable territorial restraint.

■■ The contract refers to the territory assigned to J. H. Mundy. Mundy's territory was outlined on a map. The record here shows the map, and a typewritten outline which lists the same counties that are outlined on the map. Two witnesses testified that the exhibits were in the files of the offices of the appellee. The appellant admitted that as an employee of his new employer he would work the same territory covered by the contract he had with appellee, plus some additional territory (not covered by the temporary injunction). The trial court found that the territory covered by the contract was definite and certain (except as to four counties eliminated from the restraint). The covenant not to compete is valid and enforceable irrespective of the method used to designate the territory covered by the contract (by reference to a map). Even in such cases where the territory is uncertain and considered unreasonable, a court of equity may nevertheless enforce the contract by granting an injunction restraining the defendant for a reasonable time within an area that is reasonable under the circumstances. Lewis v. Krueger, Hutchinson and Overton Clinic, 153 Tex. 363, 269 S. W.2d 798 (1954); Spinks v. Riebold, 310 S.W.2d 668 (Tex.Civ.App.—El Paso 1958, wr. ref'd).

■ The evidence shows without question that the appellee has and will continue to suffer business losses unless the appellant is enjoined. The map evidence by reference in the contract and the testimony from appellant himself, is sufficiently definite to uphold the trial court's restriction as to the area involved. We hold that the area covered by the temporary injunction is reasonable.

■ In a hearing on an application for a temporary injunction the only question before the court is the right of the applicant to preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits. In order to warrant the issuance of the restraint, the applicant need only to show a probable right and a probable injury. He is not required to establish that he will finally prevail in the litigation. Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549 (Tex.Sup.1953). The appellee has met this test. He has properly alleged the wrong committed by the appellant. The appellant has not shown in any way that the trial court has abused its discretion in protecting appellee for one year within the territory covered by the temporary injunction. It is generally held that there is no abuse of discretion in the issuance of a writ, if the petition alleges a cause of action and the evidence adduced tends to support it. Southwestern Greyhound Lines, Inc. v. Railroad Commission, 128 Tex. 560, 99 S.W.2d 263 (1936).

■ Appellant spends a good deal of time in his argument and in his brief to show that the items sold by the appellant did not meet expected quality standards. He reasons that he was justified in quitting his job and in selling competing products because of this. Other evidence adduced showed that similar problems as testified to by appellant and his witness, occurred in competing companies' products. Appellee's witness stated that the same kind of problems occur frequently and are experienced generally by the industry. The trial court found, based on sufficient evidence, that the appellee did furnish salable merchandise. Although on some few occasions, merchandise was sold by the appellant that was not as ordered, we fail to see how the temporary injunction will lessen any competition between competing companies in bidding for the sale of merchandise covered by the contract. The terms of the court's order restrain the appellant only. They do not restrain the competitive companies or their salesmen, nor does it restrain the appellant in other counties not covered by the order. We hold that the restraint is not unreasonable. See Chenault v. Otis Engineering Corp., 423 S.W.2d 377 (Tex.Civ.App.—Corpus Christi 1967, n. r. e.) at 381 and 382, and the authorities cited therein.

■ We have carefully reviewed the pleadings of the appellee, all of appellant's points of error and the evidence introduced upon the hearing on the temporary injunction. We hold that the pleadings and the evidence present a case of probable right and probable injury. In such a situation the trial court is clothed with broad discretion in determining whether to issue the writ. Its order will be reversed only on a showing of a clear abuse of discretion. This has not been shown by the appellant. Texas Foundries v. International Moulders and Foundry Workers Union, 151 Tex. 239, 248 S.W.2d 460 (1952). Appellant's points are overruled.

The judgment of the trial court is affirmed.