**ARROW CHEMICAL CORPORATION,**
**Appellant,**

v.

**John A. PUGH, Appellee.**

**No. 17978.**

Court of Civil Appeals of Texas,
Dallas.

Dec. 14, 1972.

Rehearing Denied Jan. 11, 1973.

Lawrence Fischman, Fischman, Rosenberg, Kasmir & Preston, Dallas, for appellant.

Donald R. Gray, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

The sole question presented by this appeal is the validity of the trial court's order denying injunctive relief to Arrow Chemical Corporation in its suit to enjoin John A. Pugh from violating the restric-

tive covenants in an employment contract. We hold that the court erred in refusing to grant the injunction.

Arrow Chemical Corporation (hereinafter called Arrow) alleged that it had entered into a written contract with John A. Pugh on March 9, 1970 under the terms of which Pugh was employed as a salesman to sell janitorial chemical supplies to customers in Dallas and Tarrant Counties. It charged that on or about September 30, 1971 Pugh terminated his employment and went to work for another concern selling, and offering to sell, orders for products similar to those manufactured by Arrow within Dallas and Tarrant Counties contrary to the express terms of the written contract. The employer sought a judgment (1) for the sum of $1,142.46 representing a sum equal to the amount between certain moneys actually advanced Pugh and the amount of commissions due him on sales made; and (2) an injunction restraining Pugh from violating the provisions of the employment contract with regard to competition in Dallas and Tarrant Counties for a period of eighteen months.

The case was tried before the court, without a jury, and the court rendered judgment awarding Arrow the sum of $1,142.46 but expressly denying to the plaintiff the injunction sought. Arrow has perfected its appeal only from that portion of the judgment denying the injunctive relief.

No findings of fact or conclusions of law were requested or filed. We have carefully examined the statement of facts to determine whether that part of the trial court's decree denying injunctive relief is supported by the record and the applicable law.

To a great extent the testimony is undisputed. On March 9, 1970 appellant and appellee entered into a written contract whereby appellant employed appellee as a representative to sell its products in Dallas and Tarrant Counties. Appellee's compensation was to be determined on a commission basis with provision for a drawing account against such commissions. Paragraph 4 of the contract contains the covenant not to compete which forms the basis for requested injunctive relief. By the express language of this paragraph Pugh covenants and agrees that during the term of his employment and for a period of eighteen months immediately following the expiration or termination of such employment for any reason including, without limitation, termination by mutual agreement, that he will not engage in the sale of products similar to those sold by appellant company in the territory designated. He expressly agrees that he will not solicit, divert or attempt to take away any of appellant's customers or business or patronage. Paragraph 4 concludes with this significant language:

"In the event of violation by Representative of any one or more of the covenants contained in this paragraph, it is agreed that the term of each such covenant so violated shall be automatically extended for a period of eighteen (18) months from the date on which Representative permanently ceases such violation or for a period of eighteen (18) months from the date of the entry by a court of competent jurisdiction of a final order or judgment enforcing such covenant, whichever period is later."

In paragraph 9 of the agreement it is provided that the contract shall be effective upon execution and may be terminated at any time by either party without notice.

It is undisputed that Pugh performed his agreement with appellant company from March 9, 1970 until September 3, 1971 in both Dallas and Tarrant Counties. Pugh voluntarily terminated his employment with appellant corporation. The evidence is conclusive that during the time Pugh worked for appellant the business of selling janitorial supplies in the territory was highly competitive. There were a number of other companies in this area engaged in selling the same type of products. There

were many salesmen operating in the territory serving their various principals in this highly competitive market. Prior to going to work for appellant company Pugh received substantial on-the-job training in order for him to better serve his customers, his company, and himself. The evidence reveals that if a salesman such as appellee does his job properly, that is, is cordial and pleasant, prompt, regular, knows his customers' needs, properly fills those needs and demonstrates the products, does not oversell the customer and in general treats the customer properly, he can, over a period of time, build up a relationship of cordiality and confidence with the customer, which is extremely valuable to both the salesman and his company.

Donald Bruce, general manager and executive secretary of appellant corporation, testified that when Pugh terminated his employment he said he was not going to be engaged in the selling of chemicals but was going to work for Universal Graphics, a company selling photocopy supplies. Pugh testified that upon terminating his employment he told Mr. Bruce that he was going to seek employment elsewhere and that he considered the contract null and void and that he was going to have to make a living any way he could. He said: "If it meant selling chemicals, I had every intention of doing that." Pugh testified that he only worked for Universal Graphics for a few days and then he went to work for Xeron Chemical Corporation, which is admittedly engaged in selling exactly the same kind of products as sold by appellant. It is also undisputed that Pugh, as an employee of Xeron, calls on the same type of customers, selling the same products as he did when he was an employee of Arrow. He says that he calls on twenty to thirty people a day, five days a week. The record contains names of all of the customers that Pugh called on while an employee of appellant and Mr. Bruce specified that a number of the accounts to whom Pugh made sales on behalf of Arrow ceased to be customers of Arrow when Pugh left Arrow's employ.

It is rather interesting to note the circumstances under which Xeron Chemical Corporation came into existence. A witness, Dwight Harrell, testified that he had been working for Ford, Bacon and Davis, and while so employed he purchased products sold by Arrow through the appellee Pugh. After Xeron was formed, and while Harrell was still employed by Ford, Bacon and Davis, he continued to purchase the same products from Xeron and did not purchase any more from Arrow. Harrell testified that he had conceived the idea of forming Xeron Chemical Corporation some three or four months prior to its actual formation and that he had discussed the plan for the new company on many occasions with Pugh while he, Pugh, was still connected with Arrow. Bruce said that about the middle of July, 1971 Pugh requested that Arrow give him some money to take a trip to Laredo, Texas with Dwight Harrell for the purposes of strengthening his relationship with Harrell who was then one of his best customers. The record of the Secretary of State's office demonstrates, and is supported by other testimony, that Pugh was one of the original incorporators of Xeron Chemical Corporation. He admitted to having some meetings with the other incorporators, including Harrell, prior to the formation of the company and said that such meetings took place over a period of two or three weeks. The articles of incorporation of Xeron were executed and acknowledged by Pugh and the other incorporators on September 1, 1971. While Pugh testified that he was not an employee of appellant corporation at the time he discussed the formation of Xeron such is highly questionable in the light of the foregoing testimony. While Pugh testified that he was no longer an officer or stockholder in Xeron yet he admitted that since the time he went with Xeron and up until the time of the trial on March 2, 1972 he had been active, as an employee, in selling janitorial chemical supplies for Xeron to customers in Dallas and Tarrant Counties which he previously

called upon while an employee of appellant corporation.

We are not advised in any manner why, or upon what legal theory, the trial court declined to grant appellant's prayer for injunctive relief. Appellee Pugh offered no evidence whatsoever on his own behalf during the trial and his attorney filed no brief before this court.

A review of the statement of facts presents a picture which reveals a definite breach of the agreement against competition. Appellee Pugh concedes that he entered the agreement with appellant; that he voluntarily withdrew from such agreement; and that he now is actively engaged in doing the very thing that he convenanted not to do when he signed the written agreement with Arrow. In this state of the record the question presents itself: Was the agreement not to compete a lawful one and therefore susceptible of being enforced by a court of equity?

■ As we pointed out in John L. Bramlet & Company v. Hunt, 371 S.W.2d 787 (Tex.Civ.App., Dallas 1963), there was a time in our jurisprudence when covenants not to compete were held to be unenforceable because in restraint of trade and contrary to public policy. However, under the customs and usages of modern business practices it is now well established that contracts ancillary to employment involving trades or professions are enforceable, though amounting to limited restraint of trade, where such contracts are reasonably limited as to time and space. Krueger, Hutchinson & Overton Clinic v. Lewis, 266 S.W.2d 885 (Tex.Civ.App., Amarillo 1954, affirmed 153 Tex. 363, 269 S.W.2d 798); Randolph v. Graham, 254 S.W. 402 (Tex. Civ.App., San Antonio 1923); 58 A.L.R. 168; Spinks v. Riebold, 310 S.W.2d 668 (Tex.Civ.App., El Paso 1958, writ ref'd); Weatherford Oil Tool Co. v. Campbell, 161 Tex. 310, 340 S.W.2d 950 (1960); Orkin Exterminating Co. v. Veal, 355 S.W.2d 831 (Tex.Civ.App., Fort Worth 1962, writ ref'd n. r. e.); Wilson v. Century Papers, Inc.,

397 S.W.2d 314 (Tex.Civ.App., Houston 1965, no writ); Carl Coiffure, Inc. v. Mourlot, 410 S.W.2d 209 (Tex.Civ.App., Houston 1966, writ ref'd n. r. e.); Restatement of the Law of Contracts, §§ 515, 516; and Annotations in 9 A.L.R. 1456, 20 A.L. R. 861, 52 A.L.R. 1362, 67 A.L.R. 1002, and 98 A.L.R. 963.

Such contracts have been held to be valid against assault on the grounds that same are void for want of mutuality. Krueger, Hutchinson & Overton Clinic v. Lewis, 266 S.W.2d 885 (Tex.Civ.App., Amarillo 1954, affirmed 153 Tex. 363, 269 S.W.2d 798); Bettinger v. North Fort Worth Ice Co., 278 S.W. 466 (Tex.Civ.App., Fort Worth 1925, no writ); and Carl Coiffure, Inc. v. Mourlot, 410 S.W.2d 209 (Tex.Civ.App., Houston 1969, writ ref'd n. r. e.).

■ An essential element of such contracts is that the covenant not to compete be reasonably incident to the contract of employment and essential to the protection of the employer's business and good will. Bettinger v. North Fort Worth Ice Co., 278 S.W. 466 (Tex.Civ.App., Fort Worth 1925, no writ); Ramey v. Combined American Ins. Co., 359 S.W.2d 523 (Tex.Civ. App., San Antonio 1962, no writ); McLean v. Employers Casualty Co., 381 S.W. 2d 582 (Tex.Civ.App., Dallas 1964, no writ); Weber v. Hesse Envelope Co., 342 S.W.2d 652 (Tex.Civ.App., Dallas 1960, no writ); and Traweek v. Shields, 380 S.W. 2d 131 (Tex.Civ.App., Tyler 1964, no writ).

■ It is quite evident from the testimony adduced that the agreement was essential to the protection of appellant's business. The business was highly competitive. Appellee was given special training by appellant to qualify him to sell appellant's products in this area. The knowledge and training of the salesman is uniquely valuable to his employer in such a highly competitive market.

■ Another essential element of the validity of such an agreement is that it

must not be unreasonable as to time or geographical area. It is apparent on the face of this contract that the covenant is limited to Dallas and Tarrant Counties and is also limited to a period of eighteen months from the date of the termination of employment or eighteen months from the date of the entry by a court of competent jurisdiction of a final judgment enforcing the covenant, whichever period is later. The question of whether the duration and area of the covenant are reasonable *vel non* is a question of law to be determined by the court. Lewis v. Krueger, Hutchinson & Overton Clinic, 153 Tex. 363, 269 S.W.2d 798 (1954); Chenault v. Otis Engineering Corp., 423 S.W.2d 377 (Tex.Civ.App., Corpus Christi 1967, writ ref'd n. r. e.); Vaughan v. Kizer, 400 S.W.2d 586 (Tex.Civ.App., Waco 1966, writ ref'd n. r. e.); and Eubanks v. Puritan Chemical Co., 353 S.W.2d 90 (Tex.Civ.App., Houston 1962, writ ref'd n. r. e.). It can only be reasonably inferred from the record that Pugh was employed by appellant for a period of eighteen months prior to his termination and that during that time, by his own admission, he built up a substantial amount of good will and rapport with the customers he called on and that he is now continuing to call upon the same customers in the same territory, selling the same products for another company. The testimony also reveals that Pugh, for several weeks prior to the termination of his employment with Arrow, collaborated with one Dwight Harrell to form a company in competition with the appellant corporation. Appellee was one of the incorporators of this competing company for which he now works. The fact that appellee worked for another company for a short time after terminating his connection with appellant company before going to work with Xeron Corporation makes his actions highly suspect. The contract between appellee and appellant is not unreasonable on its face. The territory or geographical area in question is not unreasonable nor can it be said that the period of eighteen months agreed upon by the parties is unreasonable as a matter of law.

■ It is well established that in an action to enforce a covenant not to compete in an employment agreement the burden of proof is on the person seeking to avoid the effect of the covenant not to compete. McAnally v. Person, 57 S.W.2d 945 (Tex. Civ.App., Galveston 1933, writ ref'd); and Mosimann v. Employers Casualty Co., 354 S.W.2d 171 (Tex.Civ.App., Houston 1962, no writ). In the present case appellee Pugh, who seeks to avoid the effect of the agreement, filed nothing in his answer but a general denial; offered no evidence before the court; and filed no brief before this court in support of his contentions. Appellee, to have taken advantage of any special defenses against the agreement, would have had to set them forth in his pleadings pursuant to Texas Rules of Civil Procedure 94. He did not do so.

The record abundantly demonstrates that appellant corporation's business is being jeopardized each day by the acts and conduct on the part of appellee Pugh in openly and flagrantly violating the terms of his agreement not to compete. We have before us a valid contract and the admitted violation thereof. It thus becomes the duty of the trial court to properly apply the law to the undisputed facts.

The order of the trial court denying injunctive relief is reversed and this cause is remanded to the trial court with instructions to promptly enter an order enjoining appellee Pugh from doing any of the acts which would constitute a violation of the agreement not to compete entered into with appellant Arrow Chemical Corporation for a period of eighteen months from the date of such order to be entered by the district court.

Reversed and remanded with instructions.