Douglas G. MARTIN, Appellant,

v.

KIDDE SALES AND SERVICE, INC.,
d/b/a Houston Fire & Safety
Company, Appellee.

No. 5235.

Court of Civil Appeals of Texas,
Waco.

June 21, 1973.

Wheat, Thornton, Shaw & Stillwell, E. H. Thornton, Jr., James L. Robertson, William L. Burnett, Houston, for appellant.

Fulbright, Crooker & Jaworski, M. W. Parse, Jr., Stephen C. Dillard, Houston, for appellee.

## OPINION

JAMES, Justice.

This case involves a non-competing covenant in an employment contract. Defend-ant-Appellant Martin was a man twenty-eight years of age at the time of trial, with the equivalent of a high school education, and with a wife and four young children to support. From some time in 1968 until the early part of 1969 he had been previously employed by Plaintiff-Appellee Houston Fire and Safety Equipment Company (hereinafter called "Houston Fire") without any non-competing covenant, his employment being primarily that of servicing portable fire protection and safety equipment and also making sales of such equipment.

He voluntarily quit Houston Fire in early 1969 and had other employment until January 6, 1970, when he went back to work for Houston Fire doing similar-type work as before, and this time under a written contract containing among other things the following language:

"Employee covenants that he will not within a distance of 150 miles from the Courthouse at Houston, Harris County, Texas, within a period of three years from the termination of his employment regardless of whether such termination is by reason of his leaving such employ or by reason of employer dismissing him, travel, canvas, or advertise for, or otherwise assist anyone engaged in or himself engage directly or indirectly in any line of business carried on or contemplated at the time of the termination of his employment by the employer, or furnish information directly or indirectly to anyone engaged in or interested in any such line of business. The employee further covenants not to communicate during the continuance of this contract or at any time subsequently any information relating to the secrets of the sales or services, or any other knowledge or secrets, which he then had or from time to time might acquire pertaining to the business of the employer to any person not a member of employer's firm, except as required or requested in writing by employer. This provision may be enforced

by injunction, damages or any proper remedy."

Pursuant to said contract, Houston Fire employed Martin on or about January 6, 1970, and he remained in the employment of Houston Fire until July 31, 1971, at which last-named date Martin voluntarily quit this employment.

Houston Fire's principal place of business is located in Houston. Its business for the past twenty-five years or more has been and was at the time of trial that of selling and servicing portable fire protection and safety equipment. This is a highly competitive type of business.

During this period of Martin's employment with Houston Fire last referred to, Martin was assigned a pie-shaped area of primary responsibility to work in, which was generally about a one-sixth of the City of Houston in the western portion thereof. This pie-shaped area was bounded on one side by South Main Street and on the other side by the Katy Freeway. In this area, Martin's first responsibility was that of servicing and repairing portable fire protection equipment of Houston Fire's customers. These calls were usually made by Martin in response to instructions from Houston Fire's dispatcher, while other calls were made by Martin at regular monthly, semi-annual, or annual inspection periods where customers requested it. Martin would average making about five such service calls per working day. Then, during times when he was not busy making service calls, his secondary responsibility was that of soliciting new business and selling portable fire protection and safety equipment. For this he was furnished price lists, both for sales and service, and was authorized to deviate as much as 30% from list price in order to be in position to bid on new business. His work was about 75% servicing and 25% selling. In addition to these duties, Martin was instructed at times to go outside his assigned territory into areas of other service men's territory

for the purpose of making service calls on customers, in cases where the regularly-assigned service man was sick, absent or otherwise unable to make such a call.

During the trial, Martin's counsel introduced into evidence Defendant's Exhibit Number One, which was a map of the City of Houston, showing Martin's assigned territory in green, and then showing a buffer zone around the assigned territory, which buffer zone was enclosed or outlined by a heavy blue line. The area enclosed by the blue line encompassed roughly a quadrant out of the west part of Harris County, and is described as follows:

In that area of Harris County, Texas located west of a line running from the north line of Harris County at its intersection with the Hempstead Highway, then southeast on Hempstead Highway to West 34th Street to T. C. Jester to the North Loop Freeway; (thence) East on North Loop Freeway to Highway 59; (thence) South on Highway 59 to Liberty Road; (thence) East along Liberty Road and Wallisville Road to Wayside; (thence) South along Wayside to Old Spanish Trail to Alameda Road; (thence) South out Alameda Road to its intersection with the South line of Harris County; (thence) in a westerly direction along the Harris County line to the place of beginning.

This map (Defendant's Exhibit No. One) also had marked upon it the locations of forty-five customers of Houston Fire in Harris County which were situated outside the area enclosed by the blue line. These customers were those that Martin had called upon for servicing at the direction of Houston Fire during his period of employment from January 6, 1970 through July 31, 1971. This information was based upon service tickets produced by Houston Fire's office at the request of Martin's counsel. Martin testified that of this forty-five, he had called upon thirty-nine of them only one time, and had called upon the remaining six more than one time.

After Martin voluntarily terminated his employment with Houston Fire on July 31, 1971, he went to work for Century Development Company, a corporation which was not engaged in the business of selling or servicing fire protection or safety equipment. He worked for Century until on or about June 5, 1972, when he was employed by the Houston branch of Delta Safety and Supply Company, Inc. Delta is a company which is in competition with Houston Fire. Martin began doing work for Delta in Harris County of a nature similar to the work he performed for Houston Fire, that is, servicing and selling fire protection and safety equipment. However, Martin testified that since he began working for Delta he had never contacted or called upon any customers or potential customers located within the above-described area enclosed by the blue line (his former assigned territory plus the buffer zone), nor had he called upon any of the forty-five customers of Houston Fire for whom he had made service calls, hereinabove referred to. He further testified that he had no intention of calling upon any of such customers.

Shortly after Martin went to work for Delta, Houston Fire brought the instant suit against Martin based upon his employment contract, and prayed that Martin be enjoined from selling and servicing fire protection and safety equipment in an area comprising a 150 mile radius of the Courthouse at Houston for a period of three years from July 31, 1971. Martin's answer alleges among other things that the employment contract is void and unenforceable because it is unreasonable as to time and geographical area, because it imposes upon him a greater restraint than is reasonably necessary to protect the business and good will of Houston Fire, and because it imposes an undue hardship upon him, the Defendant.

The case was tried before the court without a jury, after which the trial court entered judgment enjoining Martin for the three year period, that is, until July 31, 1974, from servicing or selling fire protec-

tion and safety equipment in Harris County. The trial court in his conclusions of law found that the non-competing covenant was unreasonable to the extent that it covered an area outside of and larger than Harris County, and therefore restricted the injunction against Martin to Harris County for the three year period.

The judgment was divided into two parts labelled "A" and "B". In effect, part "A" enjoined Martin from sales and service of fire protection and safety equipment in the area enclosed by the blue line (his old assigned territory plus the buffer zone), and in addition thereto enjoined him from selling or servicing the forty-five customers of Houston Fire that Martin had serviced, located outside of and east of the blue line. Part "B" of the judgment enjoined Martin from selling and servicing fire protection and safety equipment in the remainder of Harris County, east of and outside of the area enclosed by the blue line, save and except the forty-five customers above referred to.

Appellant Martin applied for a supersedeas of part "B" of the judgment and made bond therefor; whereupon the trial court superseded same. In this way Martin was permitted to work in Harris County outside of and east of the area enclosed by the blue line, pending appeal.

■ Appellant limits his appeal to part "B" of the judgment and asserts nine points of error. Point five contends that Martin should have been permitted to work in that area in Harris County located outside the blue line, with the exception of contacting the forty-five customers of Houston Fire located in said area. Point five is worded as follows:

"The trial court erred in failing to limit its injunction so as to permit Defendant to work in that area in Harris County located outside of the blue line shown on Defendant's Exhibit Number One, but restraining him from contacting any of the forty-five (45) places of business of customers of Appellee located in said area."

We sustain this contention. We believe that enjoining Martin from working in the entire area of Harris County was unreasonable as to area, and was an unreasonable restraint upon Martin for the protection of Houston Fire's business and good will, and imposed an undue hardship upon Martin.

In the first place, the type of work Martin performed was largely unskilled in nature. When he went to work for Houston Fire, his training consisted of one week in the shop, and about a week and a half of having a supervisor ride in the truck with him. In this manner he was taught how to inspect, refill, and repair the different makes and models of portable fire extinguishers. Houston Fire's methods of servicing fire protection equipment was practically the same as that of competitors, since they all sold and serviced essentially the same brands and models of equipment. Martin was not hard to replace, because when he quit working for Houston Fire, a replacement was secured immediately. It is true that Martin was furnished a price list for servicing and for sales of equipment; however, it appears from the record that such lists are not substantially different from those used by competitors. Martin testified that when he quit working for Houston Fire, that he turned in all such price lists and other data to Appellee, and took no information or data with him. Martin never was furnished any list of customers by Houston Fire, either in or out of his assigned territory.

■ Our Supreme Court in Weatherford Oil Tool Company v. Campbell (1960), 161 Tex. 310, 340 S.W.2d 950, has laid down the basic rules which govern the case at bar. On page 951 the court states:

"An agreement on the part of an employee not to compete with his employer after termination of the employment is in restraint of trade and will not be enforced in accordance with its terms unless the same are reasonable. Where the public interest. is not directly involved, the test usually stated for determining the validity of the covenant as written is whether it imposes upon the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer. According to the Restatement, a restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it is greater than is required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted. The period of time during which the restraint is to last and the territory that is included are important factors to be considered in determining the reasonableness of the agreement. See Annotations 9 A.L.R. 1456; 20 A.L.R. 861; 52 A.L.R. 1362; 67 A.L.R. 1002; 98 A.L.R. 963; Restatement of the Law of Contracts §§ 515, 516; Ofsowitz v. Askin Stores, Inc., Tex.Civ. App., 306 S.W.2d 923 (wr. ref.)."

■ Then on page 952 the Supreme Court in *Weatherford* goes on to say:

"As pointed out in Wisconsin Ice and Coal Co. v. Lueth, 213 Wis. 42, 250 N.W. 819, 820, *'the restrictive covenant 'must bear some relation to the activities of the employee. It must not restrain his activities in a territory into which his former work has not taken him or given him the opportunity to enjoy undue advantages in later competition with his employer.'"* (emphasis supplied).

■■ Although the territory or period of time stipulated by the parties may be unreasonable, a court of equity will nevertheless enforce the contract by granting an injunction restraining the defendant from competing for a time and within an area that are reasonable under the circumstances. Lewis v. Krueger, Hutchinson and Overton Clinic, 153 Tex. 363, 269 S. W.2d 798; Spinks v. Riebold (El Paso, Tex.Civ.App.1958), 310 S.W.2d 668, error refused. *Spinks* is also authority for the proposition that equity will not enjoin the

former employee in an area where he had *not* been active in his work for his former employer. The court in *Spinks* in this connection said: "To do so would result in unnecessary harm to appellee (employee), and be of no benefit to appellant (employer)." In support of this same rule, that is, to confine the injunction of the former employee to the area where the employee has worked for his former employer, see Denny v. Roth (Galveston, Tex.Civ.App. 1956), 296 S.W.2d 944, error refused, and City Ice Delivery Co. v. Evans (Dallas, Tex.Civ.App.1925), 275 S.W. 87, no writ history. The burden of proof is upon the former employer to establish both the necessity for, and reasonableness of, the restrictive covenant it seeks to enforce through a court of equity by means of injunction against the former employee. *Denny* and *City Ice,* supra.

In the case at bar, to enjoin Martin from selling and servicing fire protection and safety equipment in the entire area of Harris County was not reasonably necessary for the protection of the business and good will of Houston Fire, and imposed an unreasonable hardship upon Martin. It was proper to enjoin him from working in the area enclosed by the blue line (the assigned territory plus the buffer zone), as well as from contacting and calling upon the forty-five firms located outside and east of the blue line, which Martin had called upon during his employment with Houston Fire.

The trial court's judgment is therefore reformed by deleting part "B" therefrom as hereinabove described, as well as deleting any other recitations in the judgment to the effect that the injunction applies to the whole of Harris County, Texas. With these deletions, the trial court's judgment is affirmed.

Appellant's ninth point of error asserts that the three (3) year time period of the non-competition covenant was unreasonable. We overrule this contention. Daniel v. Goesl (1960), 161 Tex. 490, 341

S.W.2d 892; Lewis v. Krueger, Hutchinson and Overton Clinic (1954), 153 Tex. 363, 269 S.W.2d 798; Chenault v. Otis Engineering Corporation (Corpus Christi, Tex.Civ.App.1967), 423 S.W.2d 377, error refused NRE. Also see Spinks v. Riebold, supra, and the cases cited in 310 S.W.2d, syllabus 2 on page 669.

We have carefully considered Appellant's remaining points, and they are are overruled.

The trial court's judgment, as reformed in the particulars hereinabove pointed out, is affirmed.

Costs of this appeal are taxed against the Appellee.

Reformed and affirmed.