**COIFFURE CONTINENTAL, INC.,**
**Appellant,**

v.

**Hans ALLERT, Appellee.**

**No. 18510.**

Court of Civil Appeals of Texas, Dallas.

Jan. 23, 1975.

Rehearing Denied Feb. 20, 1975.

Donald W. Keck, Keck & Barnes, Dallas, for appellant.

George M. McDonald, Kelsoe & Paternostro, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

Coiffure Continental, Inc. brought this action in the district court seeking to enjoin Hans Allert from violating a covenant against competition contained in an employment contract between the parties. The trial court denied the relief sought and this appeal followed. We find that the trial court erred in refusing to grant temporary injunction and, therefore, reverse the judgment.

At all times relevant to this case, Coiffure Continental, Inc. operated three places of business in Richardson and Dallas engaging in hairdressing for women. One of its shops is located at 210 Northpark in Dallas, where it employed approximately fifteen hairdressers. Gunther Sperling is president and general manager of the corporation. On November 1, 1963, following negotiations, the corporation entered into a written employment contract with Hans Allert, then a resident of Germany, in which Allert agreed to be employed by Coiffure Continental, Inc. as a hairdresser. The contract contained the following provision:

> EMPLOYEE further agrees that he will not individually nor with any other person working or not working for said firm, for a period of TEN (10) MONTH immediately following his resignation as an EMPLOYEE for said firm for any reason or disagreement whatsoever open-work-or assist in any beauty salon within the radius of TEN (10) miles from any beauty salon in which EMPLOYEE had worked longer than (2) months, and such beauty salon is owned by COIFFURE DE CONTINENTAL INC. or COIFFURE D' EUROPE.

The contract also provided a guaranteed minimum of $400 per month and a 50% commission of all gross proceeds in excess of $800 produced as a result of Allert's services.

Allert came to the United States and started his employment for the corporation

pursuant to such contract in February 1964, and was assigned to the Northpark salon. He continued this employment without interruption for more than ten years. On August 18 or 19, 1974, the employment relationship was severed and Allert admits that he then entered into a competitive hairdressing business within the ten-mile radius designated in the contract. This action was then instituted by the corporation to restrain Allert from violating the noncompetitive agreement.

In defense of the action, Allert took the position that the 1963 contract of employment had been revoked by a subsequent agreement made between the parties in 1967. We hold that the subsequent agreement did not revoke the original contract.

On January 1, 1967, Allert and the corporation entered into a written agreement in which the corporation agreed to pay Allert a bonus of $80 for completing three full years of working for the company, ending February 28, 1967, and thereafter agreed to pay Allert a "five percent additional commission from income received through services performed by employee." As originally drawn, this agreement provided that the first $1,000 of said bonus and commission should be a "guarantee deposit" held by employer and released only to employee upon compliance with the following agreements: "(1) To give a written notice when resigning of at least four months, before leaving present employment; (2) To comply and agree with all articles signed in employment contract; and (3) Not to take away any employees working for Coiffure Continental for at least nine months after resigning." The second provision above quoted was deleted prior to execution of this agreement.

On the trial of the case Allert testified that he had specifically requested that the second provision of the agreement be deleted, saying:

> I asked him for to strike it out because I wanted to be completely out of that contract and we want to make a new contract and that's what he promised me.

By this testimony, appellee Allert contends that the entire 1964 contract was revoked by mutual agreement and that the 1967 agreement is related to the older agreement only with reference to the basis for compensation. Accepting the testimony of Allert, as the trial judge must have, this places the dealings between the parties in the following context: (1) They have an operative legal relationship under the 1964 agreement; (2) Allert becomes dissatisfied; (3) The corporation and Allert agreed to terminate the 1964 contract and increase defendant's compensation; and (4) The parties execute the 1967 agreement. The question thereby presented is whether all prior and contemporaneous oral agreements are considered merged into the 1967 agreement. If so, this would have the effect of excluding Allert's testimony that the corporation orally agreed to terminate the 1964 contract inasmuch as there is no reference or inference in the 1967 instrument concerning such termination. We conclude that this parol testimony was not admissible.

In resolving the question, we find the rule with respect to the proof and enforcement of collateral agreements to have been stated by Justice Calvert in Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W. 2d 30, 33–34 (1958). Speaking for the Supreme Court, he followed the rule, as found in Restatement of Contracts § 240 (1932):

> (1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and
>
> (a) is made for separate consideration, or
>
> (b) is such an agreement as might naturally be made as a separate

agreement by parties situated as were the parties to the written contract.

Assuming that the alleged oral revocation of the 1964 contract is consistent with the 1967 instrument, such oral agreement clearly does not fall within subsection (a) of the above-stated rule because no additional consideration beyond retention of Allert's services was provided for the revocation agreement. Accordingly, we must consider if the oral agreement "might naturally be made as a separate agreement by parties situated as were the parties to the written contract." We think not. As *Hubacek* notes, "[I]t is more than normally natural that agreements will be made collaterally to the execution of negotiable instruments because to include them would destroy negotiability." There is no such reason for omission of the agreement in this instance. Allert testified that he wanted completely out of the 1964 contract when he executed the 1967 agreement. From the beginning, he had worked under a written contract. It does not seem "natural" to us that when they signed the subsequent agreement, which provided additional compensation, the parties would make an oral agreement revoking the former agreement without mentioning such revoking agreement and would leave all the terms of the employment, other than those concerning the additional compensation, to rest on the oral understanding. It is extremely doubtful that Allert would revoke that contract and execute the 1967 agreement providing for an additional five percent commission, without mentioning the fifty percent commission which produced the major portion of his income for the majority of the ten years he was employed by the corporation. Therefore, the parol evidence rule precludes the enforcement of the contemporaneous agreement revoking the 1964 contract. Accordingly, we hold that the 1964 contract remains effective, as amended by the 1967 agreement.

Allert argues that the deleted portion of the 1967 instrument demonstrates the intent of the parties to revoke the 1964 contract. We cannot agree with this contention inasmuch as the portion of the 1967 agreement that had been stricken was merely a condition to be fulfilled before the corporation released the $1,000 to Allert. Such removal of the provision can in no sense be held to be an absolute revocation of the 1964 contract.

Allert also contends that the covenant not to compete is inoperative because the corporation fired him and the quoted covenant is only operative following his resignation. The testimony presented in this record is clear as to what actually happened prior to the time Allert left the employment of the corporation. Allert testified that prior to August 18, 1974, he had already signed a proposed lease agreement on property he intended to use as a beauty shop within the proscribed territorial restriction of the noncompetitive covenant. He further testified that he had made a bank loan application in order to finance his new endeavour and that he had ordered printed announcements to be mailed out to prospective customers, including customers of the corporation. Both Allert and Sperling, the latter on behalf of the corporation, testified that on August 18, 1974, (Sunday), Sperling called Allert and they arranged a meeting at the Northpark salon. At that time Sperling told Allert that he knew of Allert's preparation to open his own shop and if he was going to compete with the corporation, he should terminate his employment with the Northpark store at that time. On Monday, August 19, 1974, which normally would be his day off, Allert gave Sperling the keys which he had used and received a check for the balance of his earnings in return. Sperling testified he informed Allert at that time that if the bank loan fell through Allert could return to his work with the corporation on Tuesday. The bank loan did not fall through and Allert never returned to the corporation's em-

ployment. Regardless of what Allert may have said about being "fired," we construe these facts to clearly demonstrate that Allert chose to leave the corporation's business. Allert had the clear choice to remain (1) on Sunday, August 18, 1974, by not competing with the corporation, and (2) on Monday, August 19, 1974, by giving assurances of his intention not to compete and by coming to work on schedule. By his failure to return to work with the corporation, Allert clearly made his choice which constitutes his resignation pursuant to the terms of the 1964 contract.

In any event, we are not convinced that the provisions of the agreement of 1964 only apply in the event of resignation of the employee. It is expressly provided that the employee agrees that he will not compete for a period of ten months within the radius of ten miles "immediately following his resignation as an employee of said firm for any reason or disagreement whatsoever . . . ." The word "disagreement" would indicate that any dispute or lack of understanding between the parties resulting in cessation of employment would bring into play the noncompetitive provision.

It is now well established that contracts ancillary to employment involving trades or professions which provide for agreements against competition are enforceable, though amounting to limited restraint of trade, where such contracts are reasonably limited as to time and space. Krueger, Hutchinson & Overton Clinic v. Lewis, 266 S.W.2d 885 (Tex.Civ.App.—Amarillo), affirmed, 153 Tex. 363, 269 S.W.2d 798 (1954); Weatherford Oil Tool Co. v. Campbell, 161 Tex. 310, 340 S.W.2d 950 (1960); Restatement of Contracts §§ 515, 516 (1932). Allert makes no complaint either in the trial court or before this court that the territorial and time limitations are unreasonable so we need not consider this question.

It is also an essential element of such noncompetitive contracts that the covenant not to compete be reasonably incident to the contract of employment and essential to the protection of the employer's business and goodwill. Toch v. Eric Schuster Corp., 490 S.W.2d 618 (Tex.Civ.App.—Dallas 1972, writ ref'd, n. r. e.). The record before us demonstrates conclusively that Allert violated the terms of the noncompetitive agreement by entering a similar business within an area of less than ten miles from the business of the corporation, and continues to do so without restraint. It is also evidence that such competition by Allert constitutes an invasion into the business of the corporation and that such should not be allowed. We find, and hold, that the trial court abused its discretion in refusing to grant the injunctive relief sought by appellant corporation.

The judgment of the trial court is reversed and here rendered that Hans Allert be and is hereby restrained from engaging, directly or indirectly, in the practice or business of hairdressing or cosmetology within a radius of ten miles of any location or business owned by Continental Coiffures, Inc. in Dallas or Richardson, Texas, and is further enjoined from soliciting or diverting the business of any customer of Continental Coiffures, Inc. to Allert's benefit or to that of any competitive beauty salon, such injunction to remain in force and effect pending final hearing on the merits of this cause now pending in the district court of Dallas County, Texas, but in no event beyond the period of ten (10) months following August 19, 1974.

Prior to issuance of mandate herein, Coiffure Continental, Inc. shall execute and file with the clerk of this court a bond payable to Hans Allert, with two or more good and sufficient sureties, to be approved by the clerk of this court in the amount of $5,000, conditioned as required by the terms of Texas Rules of Civil Procedure, rule 684.

Reversed and rendered.