Billy L. GILLEN and Gary Jarvis, Appellants,

v.

DIADRILL, INC., Appellee.

No. 1923.

Court of Appeals of Texas, Corpus Christi.

Sept. 24, 1981.

Rehearing Denied Oct. 29, 1981.

Second Rehearing Denied Nov. 30, 1981.

Gary Norton, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellants.

Michael Kendrick, Jr., Head, Kendrick & Head, Corpus Christi, for appellee.

Before NYE, C. J., and UTTER and KENNEDY, JJ.

## OPINION

UTTER, Justice.

This is an appeal from an order granting a temporary injunction. The suit was brought by appellee, Diadrill, Inc., against two of its former employees, Billy L. Gillen and Gary Jarvis, appellants, to enforce a one-year restrictive non-competitive agreement. After the hearing the trial court determined that a temporary injunction should be granted but that the agreement should be modified to a period of nine (9) months as to appellant Billy L. Gillen and to a period of six (6) months as to appellant Gary Jarvis. As to the appeal of Gary Jarvis, the court order enjoining him for six (6) months has lapsed and therefore his appeal is moot.

The appellant Gillen, during the summer of 1980, executed an employment contract with appellee and was employed by appellee until March, 1981 at which time his services were terminated. The covenant not to compete contained in the employment agreement is as follows:

"6. *Covenant not to compete.* In the event that the employment of EMPLOYEE hereunder shall terminate for any reason, whether because of the expiration of this agreement or otherwise, EMPLOYEE agrees that during the period of twelve (12) months following the termination of his employment he will not, directly or indirectly, either through any kind of ownership. . . . or as a director, officer, agent, employee or consultant, engage in the business of *developing or marketing products* which are competitive with products marketed by EMPLOYER at the time his employment is terminated, within the marketing area served by the EMPLOYEE during the period of his employment by EMPLOYER. It is expressly agreed that the remedy at law for breach of this covenant is inadequate and that injunctive relief shall be available to prevent the breach thereof." (Underlining ours)

Subsequently, appellant accepted a position with appellee's competitor Davis and Hicks. The evidence showed that Gillen, at the time of his termination of employment for appellee, took certain records, including price lists, inventory records, pictures of appellee's bits, and bit performance records showing the names of appellee's customers. The record further shows that he had solicited and obtained business from at least one of appellee's customers on behalf of Davis and Hicks.

■ Our review in this case is limited to the determination of whether the trial court abused its discretion in granting the temporary injunction. We cannot substitute our judgment for that of the trial court. *Texas Foundries v. International Moulders & F. Wkrs.*, 151 Tex. 239, 248 S.W.2d 460 (Tex. 1952).

The appellant's main points of error are that (1) the covenant not to compete was not specific enough as to the items which were to be protected; (2) the trial court enlarged upon the covenant not to compete by enjoining appellant from providing services and instructions in operational techniques; (3) the evidence was insufficient for the trial court to grant the issuance of a temporary injunction restraining appellant from providing services and instructions in operational techniques of such drill bits in that they did not constitute trade secrets; (4) the area specified in the court's order

was unreasonable; and (5) when an employer is in breach of an employment agreement the employer is not entitled to an injunction.

By signing the covenant not to compete appellant agreed not to "engage in the business of developing or marketing products which are competitive with products marketed by employer at the time his employment is terminated". As evidenced by the record in this case the state of the art of the technical phase of the oil business is in a constant need for new and improved methods of drilling for oil. Drilling bits are an integral part of this development. It is impossible to tell from day to day what new ideas will come forth and how they will implement the practices and procedures now in use.

This is also true of the term "marketing". Different circumstances require different marketing techniques, information and data. It also may encompass more diversified methods of dissemination of information in some businesses as compared to others. Therefore in a non-competitive agreement of this type it would be impractical if not impossible to particularize each and every phase of developing or marketing which would need to be identified in order to protect the employers' interest.

■■ The trial court, after hearing all of the evidence, specifically limited appellant from engaging in business in selling, marketing and developing as to three items; drill bits, stabilizers and cement mills. Under the law it was incumbent upon the trial court to particularize the specific activities from which the appellant was to be enjoined. We hold that the non-competitive agreement was not overbroad as to the specific interests to be protected thereunder. *Coiffure Continental, Inc. v. Allert,* 518 S.W.2d 942 (Tex.Civ.App.—Dallas 1975, writ ref'd, n.r.e.) and *Toch v. Eric Schuster Corporation,* 490 S.W.2d 618 (Tex.Civ.App. —Dallas 1972, writ ref'd, n.r.e.).

■ Appellant next claims that the trial court's order enlarged upon the covenant not to compete by prohibiting appellant from providing services and instructions in operational techniques. It is admitted by appellant and appellee that there was a conflict in the testimony as to the amount and degree of the technical advice, information or expertise acquired by appellant which was attributable to the employment with appellee. The trial court resolved this conflict against appellant. There were no findings of fact or conclusions of law requested or filed in this cause. Under these circumstances the trial court's ruling should not be disturbed, absent an abuse of discretion. As stated in *Davis v. Huey,* 571 S.W.2d 859 (Tex.1978):

> "The appellate court may not substitute its judgment for that of the trial court. *Texas Foundries v. International Moulders & F. Wkrs.,* supra. An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence. *Zmotony v. Phillips,* 529 S.W.2d 760 (Tex.1975). Here, as no findings of fact or conclusions of law were filed, the trial court judgment must be upheld on any legal theory supported by the record. *Seaman v. Seaman,* 425 S.W.2d 339 (Tex.1968)."

■ Under the evidence we believe this was not an enlargement of the obligations imposed under the non-competition agreement and did not constitute an abuse of discretion. *Weatherford Oil Tool Company v. Campbell,* 161 Tex. 310, 340 S.W.2d 950 (Tex.1960); *Arrow Chemical v. Pugh,* 490 S.W.2d 628 (Tex.Civ.App.—Dallas 1972, no writ); *Obsowitz v. Askin Stores,* 306 S.W.2d 923 (Tex.Civ.App.—Eastland 1957, writ ref'd) and *Grace v. Orkin Exterminating Co.,* 255 S.W.2d 279 (Tex.Civ.App.—Beaumont 1953, writ ref'd, n.r.e.).

■ Appellant further contends that information which is generally available in the industry cannot be the basis of a valid covenant not to compete, citing *Custom Drapery Company v. Hardwick,* 531 S.W.2d 160 (Tex.Civ.App.—Houston [1st District] 1975, no writ). The evidence in this case establishes that the development, manufacturing and selling of drill bits is a highly competitive business. It is clear that the

experience gained by appellant would enable appellant's new employer, Davis and Hicks, to use the information in their operation and as a result, Davis and Hicks would become more competitive in a shorter period of time than would likely be the case without the services of appellant.

The following definition of a "trade secret" from the American Law Institute Restatement of Law has been approved:

"A trade secret may consist of any formula, pattern, device or compilation of information which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers."

See *Hyde Corporation v. Huffines*, 158 Tex. 566, 314 S.W.2d 763 (Tex.1958); *K & G Oil Tool and Service Company v. G & G Fishing Tool Service*, 158 Tex. 594, 314 S.W.2d 782 (1958); *West v. Pennyrich International, Inc.*, 447 S.W.2d 771 (Tex.Civ.App.—Waco 1969, no writ); and *Weed Eater, Inc. v. Dowling*, 562 S.W.2d 898 (Tex.Civ.App.—Houston [1st District] 1978, writ ref'd n.r.e.). These cases hold that it is not essential that the process be subject to patent for it to be protected as a trade secret.

■ Appellant's next point of error contends that the area involved is unreasonable. The test for determining whether a non-competitive clause is reasonable is set out in *Weatherford Oil Tool Company v. Campbell*, supra, 340 S.W.2d p. 951, where the court stated:

"... the test usually stated for determining the validity of a covenant...is whether it imposes upon the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer...a restraint of trade is unreasonable if it is greater than is required for the protection of the person for whose benefit the restraint is imposed or imposes a new hardship upon the person restricted."

The evidence was undisputed that appellant had at one time or another during his employment with appellee worked or made contacts with customers on behalf of appellee in areas set forth in the trial court's order. The covenant in question clearly states that the appellant agrees, for a period of one year not to compete with the appellee. Appellant signed a contract which provided that the covenant would apply to the marketing areas "served by employee during the period of his employment by employer". It has been repeatedly held that a non-competition agreement is enforceable in the areas where the employee had worked for his former employer. *Martin v. Kidde Sales and Services, Inc.*, 496 S.W.2d 714 (Tex.Civ.App.—Waco 1973, no writ); *American Speed Reading Academy, Inc. v. Holst*, 496 S.W.2d 133 (Tex.Civ.App.—Beaumont 1973, no writ); *Whites v. Star Engraving Company*, 480 S.W.2d 757 (Tex.Civ.App.—Corpus Christi 1972, no writ). Accordingly, we hold that the area specified by the trial court in its temporary injunction was reasonable and did not constitute an abuse of discretion.

■ Finally, appellant contends that appellee is in breach of contract and therefore is not entitled to injunctive relief. Appellant's position is that certain fees and termination pay or earned vacation had not been received by him. In *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401 (Tex.1960) the Texas Supreme Court stated: "The party to a suit, complaining... of the latter's conduct... must show that he himself has been injured...". The clean hands maxim should not be applied when the appellant has not been seriously harmed and the wrong complained of can be corrected. *Rodgers v. Tracy*, 242 S.W.2d 900 (Tex.Civ.App.—Amarillo 1951, writ ref'd, n.r.e.), citing 30 C.J.S. Equity § 95, P. 484, now found at 30 C.J.S. Equity § 95, P. 1026 (1965); *Norris of Houston, Inc. v. Gafas*, 562 S.W.2d 894 (Tex.Civ.App.—Houston [1st District] 1978, writ ref'd, n.r.e.).

After hearing the evidence, the trial court resolved this issue in favor of granting the injunction. The appellant has not met the test set forth above. We agree with the trial court's findings.

We have carefully reviewed the pleadings of the appellee, all of the appellant's points of error and the evidence introduced at the hearing on the temporary injunction. We hold that the pleadings and the evidence present a case of probable right and probable injury. Appellant's points are overruled.

The judgment of the trial court is affirmed.

## OPINION ON MOTION FOR REHEARING

Appellant contends in his third point of error in his motion for rehearing that this Court erred in not ruling that the temporary injunction was invalid because the injunction failed to set forth the reasons why or how harm or injury would be suffered if the temporary injunction was denied. In this regard appellant refers us to point of error eighteen in his original brief as the basis of this argument. In his original points of error eighteen and nineteen, appellant contended that the temporary injunction failed to state the reasons why or how harm or injury would be suffered by Diadrill as required by Rule 683, T.R.C.P., and that no evidence supports a finding that probable injury to Diadrill is imminently threatened.

In the restatement of the points, appellant combines the two in a multifarious point of error. Even though appellant complained of the failure of the trial court to follow Rule 683, in this point of error, the thrust of appellant's argument and brief under this point concerned only the no evidence aspect of the case. Since appellant's point of error was briefed and argued as a no evidence point, we treated the point of error as such and not as a procedural point.

Appellant in his motion for rehearing, for the first time, relies on the procedural aspect of this point of error. An assignment of error raised for the first time in an appellant's motion for rehearing in the Court of Appeals is too late to be considered. *Wright v. Gernandt*, 559 S.W.2d 864 (Tex.Civ.App.—Corpus Christi 1977, no writ), and authorities cited therein.

If, for instance, this assignment of error might be considered as having some merit, we believe that the court's order properly stated reasons for the issuance of the temporary injunction. The reasons for the issuance of the temporary injunction are not as artfully worded or precisely phrased as we would like the court's order to be. However, the court's order, when read in context, states, as a reason for the issuance of the temporary injunction, that appellee "will probably sustain irreparable injury and damage to its business", if appellant is allowed to continue to engage in any manner in the selling or developing the products and techniques set forth in the temporary injunction. We believe that this recitation is a sufficient compliance with the requirements of Rule 683, T.R.C.P. to prevent a reversal.

We have considered all of the points on motion for rehearing and they are overruled.