**PROFESSIONAL BEAUTY PRODUCTS, INC., Appellant,**

v.

**Ellis Dexter JAY, Appellee.**

No. 8085.

Court of Civil Appeals of Texas, Amarillo.

Dec. 7, 1970.

Underwood, Wilson, Sutton, Heare & Berry, E. T. Manning Jr., Amarillo, for appellant.

Walter P. Wolfram, Amarillo, for appellee.

DENTON, Chief Justice.

Suit for permanent injunction and for liquidated damages by Professional Beauty Products, Inc. against its former employee, Ellis Dexter Jay, to enforce a covenant not to compete and for liquidated damages for the alleged violation of the negative covenant. By cross action, Jay sought damages for breach of the employment contract by appellant, and for wrongful issuance of temporary injunction. A non-suit was taken by appellee upon his counter-claim for the wrongful issuance of the temporary injunction. The trial court entered a judgment on the jury verdict denying appellant its permanent injunction; awarded appellee nominal damages on his claim for breach of

contract; and dissolved the temporary injunction issued by the court in February, 1969.

Jay was employed by Professional Beauty Products in December, 1967 as a salesman and signed an agreement that in the event of the termination of his employment he would not compete in any manner with Professional in Amarillo for a period of one year after his employment termination. The contract provided for Jay to receive a 10 percent commission on all products he sold, however, the parties orally agreed that Jay would be guaranteed a salary of $433.00 per month with the employer having the option to place Jay on the commission basis at a future time. The contract had attached a list of beauty shops and barber shops who were customers of Professional in the assigned area to be served by Jay. It was understood Jay was to receive commissions from all sales to the customers listed in his territory. Prior to the expiration of Jay's one year of employment, Professional's president informed Jay he would go on a straight commission basis on either January 1 or February 1, 1969. Jay terminated his employment with Professional on January 2, 1969.

It is uncontradicted Jay did in fact compete with Professional in the Amarillo territory shortly after terminating his employment with Professional. His defense is Professional breached the employment contract when it established an alter ego by organizing Save-Way Barber and Beauty Supply in March, 1968 to ciphon off customers from Jay, thus, materially decreasing his earnings and potential earnings.

It is without question Save-Way was organized in March, 1968 with three of four common officers with Professional. Professional entered into a management contract with Save-Way whereby Professional would manage, operate and furnish accounting services for Save-Way for a five percent of total sales for this service. Jay contends, and it is admitted, Professional furnished Save-Way with its customer list Address-o-Graph plates for advertising purposes and solicitation; and that many of the same products were sold by both Professional and Save-Way. Save-Way was described as a "discount supply house" selling for cash only and not a "full service" company, that is, providing credit, salesmen to call on customers, delivery service, etc.

The jury found: (1) That under the terms of Jay's employment contract the parties intended that Jay was entitled to commissions on all sales by Professional to persons or beauty shops on the customer list attached and (2) that sales by Save-Way were sales by Professional.

█ The primary question presented here concerns the sufficiency of the evidence to support the jury finding that sales of Save-Way were sales by Professional, that is, was Save-Way the alter ego of Professional in the management contract between the parties. We think there is ample evidence to support this finding. The two firms had common secretaries and treasurers, while the vice president of Professional was president of Save-Way. There were three common shareholders in the two corporations. Professional had complete management control of Save-Way; regular advertising was mailed by Save-Way to Professional customers who were served by Jay during his employment with Professional; the president of Professional testified Jay's sale volume gradually decreased. This was confirmed by Jay's testimony. Two former customers of Jay and Professional testified they received regular advertisements from Save-Way and purchased their products because of the cheaper prices. This discount supply house was established by Professional to meet competition as stated by Professional's president: "We put it in simply because we could see them going in all over the state." Jay received no commissions from the sales made by Save-Way. It is clear the establishment of Save-Way under the management of Professional materially affected Jay's sales vol-

**290**

ume; hence, his net commission income. This condition existed when Jay and two other salesmen were notified they would be placed on a straight commission basis. Jay thereupon left the services of Professional and shortly thereafter entered the services of one of Professional's competitors.

■ It is well settled that a former employer cannot enforce a negative covenant not to compete in a contract of employment by injunction where it has breached that contract. Langdon v. Progress Laundry & Cleaning Company (Tex.Civ.App.), 105 S.W.2d 346 (writ. ref.); SCM Corp. v. Triplett Co. (Tex.Civ.App.), 399 S.W.2d 583 (ref. n. r. e.); Vaughan v. Kizer (Tex.Civ.App.), 400 S.W.2d 586 (ref. n. r. e.).

Appellant relies principally upon Ofsowitz v. Askin Stores, Inc. (Tex.Civ.App.), 306 S.W.2d 923 (writ. ref.) to support its position in the case at bar. That case involved similar questions that are presented here, however, it is distinguishable on the facts. The employee, a store manager for his employer, charged that the employer violated the employment contract by opening three competing stores. However, the court found the evidence did not show the reduction in sales and the employee's income was caused by the opening of additional stores. The court found there was substantial evidence that most, if not all, of the loss in sales was due to the Korean War and not to the opening of the other stores.

■ We are of the view appellant's action in establishing Save-Way as an alter ego of Professional resulted in reducing appellee's sales and resulting commissions, was under the facts of this case, such wrongful conduct as to render appellant without clean hands, and precludes them from obtaining injunctive relief or damages against appellee in a court of equity.

The judgment of the trial court is affirmed.