**CUSTOM DRAPERY COMPANY, INC., Appellant,**

v.

**Perry W. HARDWICK et al., Appellees.**

**No. 16567.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 20, 1975.

Rehearing Denied Dec. 18, 1975.

Ralph Balasco, Reginald Hirsch, Houston, for appellant.

Jack R. Bailey, Houston, for appellees.

EVANS, Justice.

This is an appeal from the trial court's denial of temporary injunctive relief to appellant, Custom Drapery Company, Inc.

This suit was brought by Custom Drapery Company against appellees, Perry W. Hardwick and Glenn E. Gaumer, and other defendants, seeking temporary and permanent injunction against their participation in a competing business and from using or disclosing confidential company information. The application alleged that Hardwick had breached an employment agreement containing restrictive covenants against competition and that Gaumer and Hardwick had conspired together to form, manage and operate a competing business and had solicited other employees of Custom Drapery Company to work for them in violation of noncompetition employment agreements. It also alleged actual damages in the amount of $100,000.00 and exemplary damages.

In two points of error, Custom Drapery Company asserts the trial court abused its discretion in refusing to grant injunctive relief against appellees Hardwick and Gaumer. We have concluded the trial court's order should be affirmed.

In its brief Custom Drapery Company asserts that although appellees did not present any evidence, "the case was fully developed as both appellees were called as adverse witnesses and their testimony did not vary in any material respect from the testimony of appellant's witnesses." It further contends that "there was no material dispute as to any of the evidence, and the relevant and material evidence should for all purposes be considered as undisputed and established." It argues that the failure or refusal of the trial court to apply the law to undisputed facts constitutes an abuse of discretion, citing *Professional Beauty Products, Inc. v. Schmid,* 497 S.W.2d 597 (Tex. Civ.App.—El Paso, 1973, writ ref'd n.r.e.). Hardwick and Gaumer concur with appellant's statement that the case was fully developed, that there was no material dispute in the evidence and that the evidence should be considered as undisputed and established. It is their position that the evidence supports the trial court's denial of injunctive relief and that the legal principles applicable thereto should control the ultimate disposition of the issues between the parties. See *Furr's, Inc. v. United Specialty Advertising Company,* 385 S.W.2d 456 (Tex.Civ.App.—El Paso, 1964, writ ref'd n.r. e.); *Texaco, Inc. v. Parker,* 373 S.W.2d 870 (Tex.Civ.App.—El Paso, 1963, writ ref'd n.r. e.).

Custom Drapery Company manufactures and sells commercial draperies. Hardwick had been employed as a salesman of the company since early 1969 and after its incorporation in 1972, he became a shareholder. In June 1973 he was elected to its board of directors and made a vice president. At that time he entered into a base salary agreement with the company which provided for a salary increase of $1,000.00 per month "as compensation for all work that Custom Drapery, Inc. may require of him other than personal sales." This agreement was made subject to the approval of the board of directors but the board never expressly entered its approval. Three monthly payments in the amount of $1,000.00 each were made to Hardwick and thereafter the company refused to make further monthly payments. There was testimony to the effect that Hardwick voluntarily waived further payments, but there was nothing in the minutes of the board reflecting such an agreement on his part.

On April 11, 1974, Hardwick entered into an employment agreement with the company which recited that in consideration of his

employment he agreed that during the term of his employment he would devote his time and efforts to the business of the company and would not without the company's consent engage himself with any competitive business. This agreement also contained the following provisions:

"Employee further recognizes and acknowledges that his services are unique and extraordinary, and that the Company's accounts, customers, locations, commission structure, and financial data as they may exist from time to time, hereinafter called Company information, are valuable special and unique assets of the Company's business, and that he will not during, or within one year after the termination of this contract, disclose the Company information or any part thereof, to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever, without the consent of the Company.

"For a period of one year following the termination of his employment, however caused, the Employee will not within the geographical limits of Harris County directly or indirectly for himself, or on behalf of, or as an employee of any other person, firm, association or corporation, engage in or be employed by any drapery business or business competitive with the Company."

The agreement further provides that upon termination of his employment, Hardwick would prepare and furnish to the company a complete list of all sales which he had made and on which there was an unpaid amount or commission and that upon verification of the list the company agreed to pay him 75% of the commissions due "if, as and when payment is received by Company . . ."

Hardwick was told by the president of the company that he had one week to sign the contract or he would be fired, and the president's position in this respect was approved by the board of directors. Hardwick testified that he had signed the contract under duress and at a time when the company owed him a backlog of commissions in excess of the amount of $27,000.00. (It was company policy with respect to most salesmen that they were not paid their backlog of commissions when they were terminated.) Hardwick also testified that he had signed the contract even though his attorney advised him that it was unfair.

Prior to the time Hardwick signed the contract, his compensation included a $200.00 per month draw, his commission rate averaged 8% on new construction projects and 10% on replacement orders. He had also been furnished an American Express credit card to be used for entertainment of customers and the company had provided full reimbursement for his gasoline, oil and car insurance. Approximately one month after he signed the contract, the company reduced his commission rates to 5% or less, his American Express card privileges were taken away and his gasoline allowance was cut to 75%. A few months later his gasoline allowance was further reduced to 60% and his draw against commissions was discontinued.

Hardwick testified that after execution of the contract, the company began charging back for bad debts and told its salesmen that they would be responsible for bad debts to the extent of their commissions. He said the first month the company deducted $1,859.00 from his monthly payroll check and during the first three months of 1975 it became a standard policy for 10% of the monthly payroll check to deducted as a "bad debt write off." Hardwick further testified that the company also adopted the practice of deducting the cost of its materials from his commission and that this "100% charge back" irritated him the most.

During the late fall of 1974 Hardwick was approached by his father-in-law, Glenn E. Gaumer, about going to work for Gaumer in the apartment drapery business. Hardwick at that time declined Gaumer's offers and Gaumer proceeded to organize a business without him. Apartment Services, Inc. was incorporated in December 1974

with Gaumer as president and the company's office was located in Angleton, Texas. Hardwick decided to terminate his employment in March or April 1975 and around April 1975, accepted a renewed offer by Gaumer to come to work for him. Hardwick tendered his resignation to Custom Drapery Company on May 9, 1975, effective May 23, 1975.

Covenants against competition are not favored by our courts because of the public policy against restraints of trade and the hardships resulting from interference with a person's means of livelihood. *Byers v. Trans-Pecos Abstract Co.,* 18 S.W.2d 1096 (Tex.Civ.App.—El Paso, 1929, writ dism.); *Security Services, Inc. v. Priest,* 507 S.W.2d 592, 594 (Tex.Civ.App.—Dallas, 1974, no writ). Such covenants are enforceable only to the extent reasonably necessary to protect the business and good will of the employer. *Weatherford Oil Tool Company v. Campbell,* 161 Tex. 310, 340 S.W.2d 950 (1960). The former employer has the burden of going beyond the terms of the contract and establishing by satisfactory evidence both the necessity for and the reasonableness of the covenant he seeks to enforce. *Weber v. Hesse Envelope Co.,* 342 S.W.2d 652 (Tex.Civ.App.—Dallas, 1960, no writ); *Denny v. Roth,* 296 S.W.2d 944 (Tex. Civ.App.—Galveston, 1956, writ ref'd). Important factors to be considered in determining the reasonableness of the covenant are the period of time which the restraint is to last and the territory which is to be covered. *Weatherford Oil Tool Company v. Campbell, supra.*

The covenant in Hardwick's agreement extended to the geographical limits of Harris County and was operative for a period of one year following the termination of his employment. Covenants with similar time and area limitations have not been held unreasonable. *Professional Beauty Products, Inc. v. Derington,* 513 S.W.2d 236, 238 (Tex.Civ.App.—El Paso, 1974, writ ref'd n.r.e.) and authorities cited. There was testimony that Hardwick's sales responsibility with appellant extended to the Houston area and that Gaumer had discussed with Hardwick plans to open up a Houston branch of his business.

The question of whether the contract was reasonable as to time and area was for the trial court's determination upon the circumstances of the case. *Vaughan v. Kizer,* 400 S.W.2d 586, 589 (Tex.Civ.App.—Waco, 1966, writ ref'd n.r.e.). No specific argument has been made that the territorial and time limitations of the agreement in question are unreasonable but rather appellees assert that Custom Drapery Company failed to establish by satisfactory evidence that it had a "protectible interest" which justified injunctive relief. See *Coiffure Continental, Inc. v. Allert,* 518 S.W.2d 942, 946 (Tex.Civ.App.—Dallas, 1975, no writ).

It is also asserted that the contract was unenforceable in that it lacked mutuality. In our opinion, the agreement was not rendered unenforceable by reason of the fact that its terms did not obligate Custom Drapery Company to employ Hardwick for any specific length of time. *Krueger, Hutchinson & Overton Clinic v. Lewis,* 266 S.W.2d 885 [Tex.Civ.App.—Amarillo, aff'd 153 Tex. 363, 269 S.W.2d 798 (1954)]; *Ofsowitz v. Askin Stores,* 306 S.W.2d 923, 924 (Tex.Civ.App.—Eastland, 1957, writ ref'd). There was testimony indicating that Hardwick's continuation of employment was dependent upon his execution of the contract and this factor has been held sufficient consideration for such an agreement. *Orkin Exterminating Co. v. Veal,* 355 S.W.2d 831, 832 (Tex.Civ.App.—Fort Worth, writ ref'd n.r.e.); *Chenault v. Otis Engineering Corp.,* 423 S.W.2d 377, 382 (Tex.Civ.App.—Corpus Christi, 1967, writ ref'd n.r.e.); *McAnally v. Person,* 57 S.W.2d 945, 948 (Tex.Civ.App.—Galveston, writ ref'd).

Although the testimony indicated that Custom Drapery Company had suffered a decrease in the volume of its sales as the result of the loss of Hardwick and its other salesmen who left to work for Gaumer, the trial court could have concluded from the

evidence that this loss was merely a temporary result of the loss of effective sales personnel, and that the fact that they might engage themselves in competing business posed no imminent threat to the business of Custom Drapery Company. Additionally, while there was evidence that Custom Drapery Company considered certain information (i.e., customer lists, credit information, volumes purchased, material sources, prices paid, and formulae for computing prices) as confidential information and contended that such matters were "trade secrets" of the business, the trial court could have concluded from the evidence that such data was generally available to the industry and that the use or disclosure of such information by Hardwick would not result in material damage to Custom Drapery Company.

■ An essential element of the non-competitive contract is that the covenant not to compete be reasonably incident to the contract of employment and essential to the protection of the employer's business and good will. *Coiffure Continental, Inc. v. Allert, supra; Toch v. Eric Schuster Corp.,* 490 S.W.2d 618 (Tex.Civ.App.—Dallas, 1972, writ ref'd n.r.e.).

The use of methods which are not shown to pose a threat to the former employer's business does not afford a basis for injunctive enforcement of a covenant not to compete. *Munzenrieder & Associates, Inc. d/b/a United Freight Sales v. Daigle et al.,* 525 S.W.2d 288, 292 (Tex.Civ.App.—Beaumont, 1975, no writ). In *Kidde Sales & Service, Inc. v. Peairson,* 493 S.W.2d 326 (Tex.Civ.App.—Houston [1st], 1973, no writ), this court, through Justice Peden, stated:

"Covenants in an employment contract, by which the employee agrees not to compete with the employer after employment has terminated, are in restraint of trade and are valid only if shown to be within exceptions to the general rule, such as where the good will of the employer's customers had attached to the employee during the latter's employment and the employee thus had acquired during his employment a special influence with the customer which gave him an advantage over the employer in competition for the customer's business. Similar covenants have been upheld which restricted the former employee's use of that sort of information imparted to him in confidence by the employer which is called trade secrets or business secrets and which concern formulae, methods and other facts used in the business. *Grace v. Orkin Exterminating Co.,* 255 S.W.2d 279 (Tex.Civ.App.1953, writ ref., n.r.e.).

"It appears to us that the trial judge has carefully applied these principles of law. Appellant does not predicate its appeal on the training it gave Peairson, but on trade secrets he learned while in its employment.

"That a former employee was trained by the employer is not a ground for enforcing a restrictive covenant not to compete, even if the training was complex and extensive. *Grace v. Orkin Exterminating Co.,* supra.

"Matters of general knowledge in an industry cannot be appropriated by one as his secret. *Wissman v. Boucher,* 150 Tex. 326, 240 S.W.2d 278 (1951)."

■ The trial court could also have concluded from the evidence that Custom Drapery Company failed to establish it was entitled to enforcement of the covenant against competition under the "clean hands" doctrine. Although there was testimony indicating that Hardwick had participated in the company's decisions concerning reduction in compensation and had acquiesced in the company's changes in its employee policies, the trial court could have decided from the evidence that the company's conduct following the execution by Hardwick of the noncompetition agreement was inequitable and injurious to Hardwick and that the company was, therefore, not entitled to equitable relief. *National Chemsearch Corp. v. Frazier,* 488 S.W.2d

545, 548 (Tex.Civ.App.—Waco, no writ); *Vaughan v. Kizer, supra.* A former employer may be precluded from enforcement of a covenant against competition where he, and not the employee, has brought about the breach of their contractual relationship. *Professional Beauty Products, Inc. v. Jay,* 463 S.W.2d 288 (Tex.Civ.App.—Amarillo, 1970, no writ); *Middagh v. Tiller-Smith Co., Inc.,* 518 S.W.2d 589 (Tex.Civ.App.—El Paso, 1975, no writ).

The theory upon which Custom Drapery Company sought to obtain injunctive relief against Gaumer is that he, together with his son-in-law, Hardwick, conspired to interfere with the contractual relationship between Custom Drapery Company and its employees and to wrongfully appropriate and use confidential business information appropriated by Hardwick.

■ An actionable wrong is committed if one induces another's employee to breach his contract of employment for the purpose of obtaining the employee as his own or with the intent to injure the former employer. *Yost v. Justin Belt Co.,* 488 S.W.2d 850, 857 (Tex.Civ.App.—Fort Worth, 1972, rev'd on other grounds, Tex., 502 S.W.2d 681); *Raymond v. Yarrington,* 96 Tex. 443, 73 S.W. 800 (1903). However, no wrong is committed where the employee acts upon his own initiative and the new employer is merely receptive to the employee's suggestions. See *Thomason v. Sparkman,* 55 S.W.2d 871 (Tex.Civ.App.—El Paso, 1933, no writ).

■ Gaumer did in fact approach Hardwick about coming to work for him prior to the termination of Hardwick's contract with Custom Drapery Company. However, the testimony shows that this offer was rejected by Hardwick, who advised Gaumer that he had too much invested in Custom Drapery Company to make a change in his employment. The trial court could have concluded from the testimony that Hardwick's subsequent decision to terminate his employment with Custom Drapery Company was the result of his independent dissat-

isfaction with his relationship with that company and was independently made at a time prior to Gaumer's second offer of employment in April 1975. The trial court could also have found from the evidence that neither Gaumer nor Hardwick enlisted other employees of Custom Drapery Company to come to work for Gaumer and that their decision to do so was also the result of their independent judgment. The fact that Gaumer had prior knowledge of the non-competitive agreements between Custom Drapery Company and its employees would not, standing alone, conclusively establish a right to injunctive relief against Gaumer. The burden was upon Custom Drapery Company to show that Gaumer's conduct was the proximate cause of the breach of contractual relationships between it and its former employees and of the claimed damages resulting therefrom. *Moore v. Sussdorf,* 421 S.W.2d 460, 467 (Tex.Civ.App.—Tyler, 1967, writ ref'd n.r.e.). The trial court could have concluded from the evidence that the former employees, including Hardwick, would have left Custom Drapery Company's employ and engaged themselves in competitive employment independently of any inducement on the part of Gaumer. The trial court could also have concluded that there was no threat of irreparable injury to Custom Drapery Company as a result of Gaumer's activities which necessitated the grant of injunctive relief.

■ We are further of the opinion that the trial court could have determined from the evidence that Gaumer and Hardwick had no intention of using or disclosing confidential business information obtained by Hardwick during his employment with Custom Drapery Company. Where there is no intention on the part of the former employee to do the thing sought to be enjoined injunctive relief is properly denied. *Luccous v. J. C. Kinley Co.,* 376 S.W.2d 336, 341 (Tex.1964).

■ In view of further proceedings in the case, we have avoided a detailed discussion of the evidence adduced upon the tem-

porary injunction hearing. Notwithstanding the positions respectively taken by the parties in their briefs that the material facts were undisputed, we found substantial differences of opinion as to the facts presented and the conclusions to be drawn therefrom. Our ruling here is without prejudice to the resolution of these differences by the trier of facts upon final hearing.

We hold that the trial court did not abuse its discretion in denying equitable relief upon temporary injunction.

Affirmed.