

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00108-CV

ALLY FINANCIAL, INC.                                           APPELLANT

V.

SANDRA GUTIERREZ AND                                  APPELLEES
HOMEWARD RESIDENTIAL

----------

## FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Ally Financial, Inc., appeals from the trial court's order granting summary judgment in favor of appellees Sandra Gutierrez and Homeward Residential. We affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

---

[1]*See* Tex. R. App. P. 47.4.

## I.  BACKGROUND

### A.  GUTIERREZ'S EMPLOYMENT AT ALLY

Ally, which is incorporated in Delaware and headquartered in Michigan, is a "leading vehicle financial services company" and "operates as a bank holding company."  Ally also originates and sells mortgages.  Gutierrez began working for Ally in 2004 and was an "IT Leader" in Ally's Lewisville, Texas, office.  The IT department was responsible for managing personnel and "ensuring work performed adheres to company standards and . . .  business requirements."  Gutierrez supervised "approximately 89 information technology employees" and evaluated their performance.  She was responsible for "all aspects" of the operation of the IT department.  Gutierrez had access to personnel records for those employees she supervised and to Ally's strategic and confidential business plans.

In 2008, Ally adopted a "Long-Term Equity Compensation Incentive Plan" (the CIP) under which certain employees would receive award payments "based on Common Stock Value."  The CIP's purpose was to "motivate certain employees [of Ally and its subsidiaries] to put forth maximum efforts toward the growth, profitability, and success of [Ally and its subsidiaries] by providing [stock] incentives to such employees."  By its explicit terms, the CIP was governed by Michigan law:  "The Plan, all Awards granted hereunder, and all actions taken in connection herewith shall be governed by and construed in accordance with the laws of the State of Michigan without reference to principles of conflict of laws,

2

except as superseded by applicable federal law." The CIP also included a non-solicitation covenant:

> While the Participant is employed by the Company or a Subsidiary, and during the 2-year period immediately following the date of any termination of the Participant's employment with the Company or a Subsidiary, such Participant shall not at any time, directly or indirectly, whether on behalf of . . . herself or any other person or entity (i) solicit any client and/or customer of the Company or any Subsidiary with respect to a Competitive Activity or (ii) solicit or employ any employee of the Company or any Subsidiary, or any person who was an employee of the Company or any subsidiary during the 60-day period immediately prior to the Participant's termination, for the purpose of causing such employee to terminate his or her employment with the Company or such Subsidiary.

If a CIP participant violated the non-solicitation covenant, the CIP required the participant to repay any award payments under a claw-back provision (the claw-back provision). A participant also could forfeit her rights to unvested awards under the CIP if she voluntarily resigned her employment: "[I]f a Participant's employment is terminated by the Participant prior to a Payment, then the Participant's Unvested Awards shall be immediately forfeited as of the date of such termination of employment" (the automatic-forfeiture provision).

In 2009, Ally was affected by the downturn in the economy and accepted bailout funds from the federal government. Ally had to lay off several IT employees, which "caused genuine concern amongst employees at [the IT department in Lewisville] regarding Ally's financial instability." On March 18, 2009, Gutierrez received her first award letter under the CIP (the 2009 award letter). On April 9, 2009, Gutierrez signed and returned the 2009 award letter to

3

accept the award, which would vest and be paid in four installments over a four-year period:

- 25% on December 31, 2009:   [to be paid] within 75 days of [December 31, 2009;]

- 25% on December 31, 2010:   [to be paid] within 75 days of [December 31, 2010;]

- 25% on December 31, 2011:   [to be paid] within 75 days of [December 31, 2011;]

- 25% on December 31, 2012:   [to be paid] within 75 days of [December 31, 2012.]

The 2009 award letter, above Gutierrez's signature line, specified: "I accept and agree to become a participant in the [CIP] and will abide by the terms and conditions of the [CIP] and this award letter."

Gutierrez accepted a second award under the CIP on February 24, 2010, under which she would receive three, deferred payments with different vesting and payment dates:

- 1/3rd vests on February [illegible], 2011 and will be paid as soon as practical following February [illegible], 2013;

- 1/3rd vests on February [illegible], 2012 and will be paid as soon as practical following February [illegible], 2013;

- 1/3rd vests on February [illegible], 2013 and will be paid as soon as practical following February [illegible], 2014.

Gutierrez accepted a third award under the CIP on March 7, 2011, which similarly provided for three, deferred payments:

4

- $1/3^{rd}$ vests on February 14, 2012 and will be paid as soon as practical following February 14, 2014;

- $1/3^{rd}$ vests on February 14, 2013 and will be paid as soon as practical following February 14, 2014; and

- $1/3^{rd}$ vests on February 14, 2014 and will be paid as soon as practical following February 14, 2015.

Gutierrez received the first two payments under the 2009 award letter on February 14, 2010, and February 13, 2011. Based on the vesting and payment dates, Gutierrez apparently never received payments under the second and third award letters.

## B. GUTIERREZ'S EMPLOYMENT AT HOMEWARD AND CONTACT WITH ALLY EMPLOYEES

On October 14, 2011, Gutierrez left her employment with Ally and began working for one of Ally's competitors in the mortgage market—Homeward—as its chief technology officer. Ally and Homeward "provide the same or substantially similar mortgage services to customers in similar locations throughout the country." At Homeward, Gutierrez assumed similar duties as those she performed for Ally and was tasked with "driv[ing] all aspects of staff management, including recruiting." Gutierrez stated, however, that she was never asked to recruit for Homeward.

During the first few months of Gutierrez's employment with Homeward, approximately eight Ally employees left to work at Homeward. Five of those employees—Danny Travis, Sherri Lee Bolling, Terry L. Webb, Aaron Weiss, and Heath Mitchell—contacted Gutierrez to get information about possible job

opportunities at Homeward. Gutierrez forwarded to them relevant job descriptions for openings at Homeward. Gutierrez told each of the five employees that she could not solicit or recruit them for employment with Homeward. The other three employees—Kimberly Beasley, George Biddle, and Todd Coffey—pursued employment with Homeward on their own and without contacting Gutierrez based on Ally's perceived financial instability. Indeed, Beasley began working with a recruiter to find a new job before Gutierrez left Ally. All eight, however, left Ally to work for Homeward within approximately seven months after Gutierrez left Ally.

After Beasley left Ally to work for Homeward, she contacted Tyler Burkey, who was still employed at Ally, "at [his] request about a potential job opportunity at [Homeward]." Beasley told Burkey that Gutierrez "was throwing [Burkey's] name out quite a bit at Homeward, and [Gutierrez] had asked [Beasley] about [Burkey's] . . . skills." Burkey sent Beasley his resume but ultimately decided not to leave his job at Ally.

Another Ally employee, Augustine Hidalgo, contacted Gutierrez after Gutierrez left Ally to ask "how[']s it going up there." Gutierrez told Hidalgo that there was a system-engineer position available at Homeward if he knew of anyone looking for a job. After Hidalgo and Gutierrez discussed via email details of the position, Gutierrez told Hidalgo to send his resume to her "[s]ince you just formally just asked me and I did not recruit you." Hidalgo forwarded his resume to Gutierrez. It appears Hidalgo is still employed by Ally.

6

## C. DEMAND LETTER AND THIRD PAYMENT UNDER 2009 AWARD LETTER

On March 12, 2012, after Beasley and Weiss resigned from Ally to work for Homeward, Ally sent Gutierrez a letter to "remind" her of the "terms and conditions of [the CIP]," specifically the non-solicitation covenant. The letter stated that Gutierrez had "solicited at least four (4) Ally employees from our Lewisville, TX facility,"[2] and warning that necessary "enforcement action" would be taken. Ally based its allegations on the fact "[t]hat the employees were all out of the same location, all went to work at the same new company, all under Ms. Gutierrez's leadership." Ally further stated that any violation of any contractual restrictive covenant (including the non-solicitation covenant) would result in the forfeiture of "any Award that has not yet been paid" and require Gutierrez to "repay any Award Payments made within 24-months of an enforcement action." Ally sent a copy of the letter to Homeward's human-resources department. Between March 17 and 27, 2012, Bolling, Webb, Travis, and Mitchell resigned from Ally to work at Homeward.

On April 22, 2012, Gutierrez received a third payment under the 2009 award letter. Gutierrez believed this payment under the CIP meant Ally had concluded that she, in fact, had not violated the non-solicitation covenant:

> I assumed Ally had determined that I had not breached the non-solicitation covenant . . ., or that Ally did not intend to pursue me for

---

[2]Ally's corporate representative later stated that three of these employees were Bolling, Webb, and Beasley. But Bolling and Webb did not resign until March 17, 2012.

any violation of the [CIP] that Ally thought had occurred. At the time I received the Demand Letter and the final award payment under the [CIP], I was aware that Ally had waived the Non-Solicitation Provision for other employees in the past. I also knew that several former high-level Ally employees were *already working at Homeward* when I accepted employment there.

After Ally made its third payment to Gutierrez under the 2009 award letter, Biddle and Coffey left Ally to work for Homeward.

## D. THE UNDERLYING LAWSUIT

On July 9, 2012, and after "several more employees voluntarily left," Ally filed suit against Homeward and Gutierrez, raising claims for unfair competition, tortious interference with contractual relations, tortious interference with employment relations,[3] and conspiracy. Ally also alleged Gutierrez breached the CIP and misappropriated Ally's trade secrets. Ally's suit against Gutierrez was the first time it had sought to enforce the CIP against a former employee.

Homeward and Gutierrez moved for summary judgment and asserted that they were entitled to judgment as a matter of law because the non-solicitation covenant was unenforceable as overly broad and as unrelated to a business interest of Ally. They alternatively argued that even if the covenant was enforceable, Ally waived its right to seek its enforcement. Based on these arguments, Homeward and Gutierrez contended that a finding that the covenant

---

[3]Ally asserted Homeward and Gutierrez interfered with Ally's business relationship with Beasley, Weiss, Bolling, Webb, Travis, Mitchell, Biddle, and Coffey by preventing Ally from "continuing its employment relationship" with these employees.

8

was unenforceable would dispose of all of Ally's claims against both Homeward and Gutierrez.

Homeward and Gutierrez also separately addressed Ally's tortious-interference and conspiracy claims. They asserted summary judgment was appropriate as to Ally's tortious-interference-with-contractual-relations claim because the underlying contract was unenforceable and because Gutierrez could not be found to have tortiously interfered with a contract to which she was a party. As to Ally's tortious-interference-with-employment-relations claim, Homeward and Gutierrez argued that there was no evidence of willful and intentional interference and that any interference was legally justified. Homeward and Gutierrez contended that Ally's derivative conspiracy claims failed as a matter of law because the underlying claims also failed.

After extensive briefing, the trial court granted Homeward and Gutierrez's motion and rendered judgment in their favor "on all of [Ally's] claims." Ally timely filed a notice of appeal and now argues in a single issue that the trial court erred in granting the summary-judgment motion based on the arguments raised in Homeward and Gutierrez's motion. *See* Tex. R. App. P. 38.1(f); *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970). *See generally Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex. 1989) ("When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious.").

9

## II. STANDARD OF REVIEW

### A. TRADITIONAL OR MATTER-OF-LAW MOTION

In their summary-judgment motion, Homeward and Gutierrez did not specify whether they were urging a no-evidence motion or a matter-of-law motion, and the trial court did not so specify in its order. *See* Tex. R. Civ. P. 166a(b), (c), (i). On appeal, however, they solely argue the propriety of the summary judgment under rule 166a(c). Because their appellate argument defends the summary judgment solely on the basis of rule 166a(c) and because their arguments regarding their affirmative defenses of legal justification and waiver could not have been raised in a no-evidence motion under rule 166a(i), we will solely review the trial court's grant of summary judgment under the standards applicable to a traditional or matter-of-law motion under rule 166a(c). *See* Tex. R. Civ. P. 166a(i) (stating party may move for no-evidence summary judgment on "one or more essential elements of a claim or defense *on which an adverse party would have the burden of proof at trial*" (emphasis added)); *Harrill v. A.J.'s Wrecker Serv., Inc.*, 27 S.W.3d 191, 194 (Tex. App.—Dallas 2000, pet. dism'd w.o.j.) (holding defendant improperly asserted no-evidence motion for summary judgment on affirmative defense of preemption).

### B. GUTIERREZ AND HOMEWARD'S MOTION AS TO ALLY'S CAUSES OF ACTION

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Likewise, we determine the enforceability of a contract under a de-novo standard of review. *See DaimlerChrysler Motors Co. v.*

10

*Manuel*, 362 S.W.3d 160, 170 (Tex. App.—Fort Worth 2012, no pet.). When, as here, a trial court does not specify the grounds on which the judgment is based, we will affirm the summary judgment if it is correct on any legal theory advanced by the parties and supported by the evidence. *See* Tex. R. Civ. P. 166a(c); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a genuine issue as to any material fact. *Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999).

## C. GUTIERREZ AND HOMEWARD'S MOTION AS TO THEIR AFFIRMATIVE DEFENSES

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010), *cert.*

11

*denied*, 131 S. Ct. 1017 (2011); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008). If the defendant establishes that she was entitled to judgment as a matter of law on an affirmative defense, the burden to raise a genuine issue as to any material fact shifts to the plaintiff. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

## III. DISCUSSION

### A. ENFORCEABILITY OF COVENANT

### 1. Choice-of-Law Provision[4]

Homeward and Gutierrez asserted in the trial court that Ally's claims were subject to summary dismissal because the non-solicitation covenant was unenforceable under Texas law either as overly broad and unrelated to a legitimate business interest of Ally or because Ally waived enforcement of the covenant. Thus, Homeward and Gutierrez argued that Texas law applied to the enforceability of the non-solicitation covenant despite the parties' agreement that the CIP would be governed by Michigan law. Ally responded that under Michigan law, which expressly covered all terms of the CIP, the non-solicitation covenant

---

[4]We emphasize that the issue in this case implicates a choice-of-law provision and not a forum-selection provision. *See generally In re AutoNation, Inc.*, 228 S.W.3d 663, 669 (Tex. 2007) (orig. proceeding) (refusing to "superimpose" choice-of-law analysis onto the law regarding forum-selection clauses).

was reasonable and, thus, enforceable. We review de novo the trial court's determination of which state's law governed the CIP. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 398 (Tex. App.—Dallas 2009, pet. denied).

Before determining the choice-of-law question raised by Ally, we must first determine if the applicable law of the two jurisdictions differ. If the result would be the same under the law of either jurisdiction, there is no need to resolve the choice-of-law problem. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419, 421 (Tex. 1984); *Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 378 (Tex. App.—Fort Worth 2003, pet. denied); *accord Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 722–23 (5th Cir.), *cert. denied*, 131 S. Ct. 428 (2010). Other than stating that the CIP's non-solicitation covenant satisfies Michigan's enforceability requirements, Ally fails to argue how the Michigan test differs from the Texas test. Indeed, both tests evaluate such a covenant's enforceability by looking at its reasonableness, which includes its duration, its geographical reach, the employer's business interest sought to be protected, and the scope of the barred activity.[5] *Compare* Mich. Comp. Laws Ann. § 445.774a (West 2011), *with* Tex.

---

[5]Ally argues in its reply brief that even if Texas law applies to determine the enforceability of the non-solicitation covenant, it is not determined through the prism of section 15.50. But Ally fails to state what enforceability test is applicable in the absence of a section 15.50 analysis. Indeed, the purpose of section 15.50 was to return Texas law to the common-law standard for the enforceability of covenants not to compete. *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 772 (Tex. 2011) (op. on reh'g). Further, the more persuasive case law applies section 15.50 to non-solicitation covenants as well as non-competition covenants. *E.g.*,

Bus. & Com. Code Ann. § 15.50(a) (West 2011). Further, both Texas and Michigan recognize that a course of affirmative conduct can amount to a waiver of a contractual provision. *Compare Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 261 (Mich. 2003), *with Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Therefore, we need not determine which law applies because they are functionally the same.

## 2. Waiver

Ally next asserts that the trial court erred by implicitly concluding that it waived its right to enforce the non-solicitation covenant. Waiver is an affirmative defense; thus, Homeward and Gutierrez bore the burden to conclusively establish all its elements. *See* Tex. R. Civ. P. 94. When the facts and circumstances surrounding the alleged waiver are not disputed, waiver is a question of law reviewable de novo. *See Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643–44 (Tex. 1996); *Palladian Bldg. Co. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 434 (Tex. App.—Fort Worth 2005, no pet.).

Homeward and Gutierrez were entitled to summary judgment on their affirmative defense of waiver if they proffered evidence conclusively establishing (1) an existing right, benefit, or advantage held by a party, (2) the party's actual knowledge of its existence, and (3) the party's actual intent to relinquish, or

*Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417, 438–39 (S.D. Tex. 2008); *Marsh*, 354 S.W.3d at 768; *York v. Hair Club for Men, L.L.C.*, No. 01-09-00024-CV, 2009 WL 1840813, at *4 (Tex. App.—Houston [14th Dist.] June 25, 2009, no pet.) (mem. op.).

intentional conduct inconsistent with, the right. *Ulico*, 262 S.W.3d at 778; *see also Sefzik v. City of McKinney*, 198 S.W.3d 884, 895 (Tex. App.—Dallas 2006, no pet.) (applying summary-judgment standard to affirmative defense of waiver). Regarding this third element, "[w]aiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). Ally focuses on this element in attacking the trial court's summary judgment. Homeward and Gutierrez assert that the third payment under the 2009 award letter was an intentional relinquishment of, or intentional conduct inconsistent with, Ally's intent to enforce the non-solicitation covenant.

The undisputed evidence before the trial court showed that Gutierrez left her employment with Ally in October 2011. Ally notified Gutierrez in March 2012 that it believed Gutierrez violated the terms of the CIP by soliciting Ally employees for employment with Homeward. In this letter, Ally raised the terms of the CIP, which contained both the claw-back provision for violations of the non-solicitation covenant and the automatic-forfeiture provision upon voluntary resignation. In April 2012, Ally paid Gutierrez a third payment under the 2009 award letter. Ally was aware at that time that Gutierrez had voluntarily resigned before the third payment under the 2009 award letter had vested and that Gutierrez was allegedly violating the non-solicitation covenant contained in the CIP.

15

Therefore, Ally represented to Gutierrez that although it believed she had violated the CIP and had forfeited her rights to all unvested payments by voluntarily resigning, it was awarding her incentive compensation as provided by the CIP. Ally's action in paying Gutierrez a third payment under the 2009 award letter was inconsistent with its previously stated intention to enforce the non-solicitation covenant. Further, Gutierrez was aware that Ally repeatedly had declined to enforce the non-solicitation covenant against other Ally employees who resigned. Ally's intentional conduct, inconsistent with its attempted enforcement of the CIP, waived its right to seek enforcement of the non-solicitation covenant.[6] *See, e.g.*, *Riley v. Meriwether*, 780 S.W.2d 919, 922 (Tex. App.—El Paso 1989, writ denied) ("Waiver can be inferred from intentional conduct which is inconsistent with claiming a known right."); *KMI Cont'l Offshore Prod. Co. v. ACF Petroleum Co.*, 746 S.W.2d 238, 243 (Tex. App.—Houston [1st Dist.] 1987, writ denied) ("[A] waiver can occur if a party knowingly possessing the right acts in such manner that the party misleads the opposing party into believing that a waiver has occurred."); *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex. Civ. App.—Amarillo 1981, writ ref'd n.r.e.) (finding waiver

---

[6]Because waiver can be based either on the party's intentional action inconsistent with the right sought to be enforced or on the party's actual intent to relinquish the right, we do not agree with Ally that evidence of inconsistent action without evidence of actual intent dooms a waiver argument. *See Tenneco*, 925 S.W.2d at 643. It appears Ally is relying on cases interpreting estoppel in the context of a breach of contract, which is distinct from waiver. *See Ulico*, 262 S.W.3d at 778.

16

"where one dispenses with the performance of something which he has a right to exact, and occurs where one in possession of any right, whether conferred by law or by contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely upon it"); *cf. Brannan Paving GP, LLC v. Pavement Markings, Inc.*, Nos. 13-11-00005-CV, 13-11-00013-CV, 2013 WL 3832717, at *6 (Tex. App.—Corpus Christi July 25, 2013, pet. filed) (finding no waiver where no evidence party seeking to enforce terms of subcontract "was aware of [opponent's] failure to comply with the subcontract").

Homeward and Gutierrez conclusively established through undisputed evidence that Ally waived its right to seek enforcement of the non-solicitation covenant based on its inconsistent action in issuing the third payment to Gutierrez under the 2009 award letter after Gutierrez forfeited the unvested award upon her resignation from Ally and after Ally notified Gutierrez that she had breached the non-solicitation covenant. *See, e.g.*, *Bekins Moving & Storage Co. v. Williams*, 947 S.W.2d 568, 576 (Tex. App.—Texarkana 1997, no pet.). Thus, the burden to raise a genuine issue as to any material fact regarding waiver shifts to Ally. *See Clear Creek Basin*, 589 S.W.2d at 678–79. Ally attempts to raise a genuine issue as to a material fact regarding waiver by asserting that the third payment under the 2009 award letter alone cannot establish waiver because "payment of the funds due was nothing more than a ministerial act by Ally" under the terms of the CIP. In short, Ally contends that

17

because it was contractually obligated to pay Gutierrez under the CIP, it was required to pay her even though it had expressed to Gutierrez that she was in violation of the CIP. This argument is unpersuasive.

As laid out above, Gutierrez's resignation in October 2011 automatically forfeited her right to any unvested payments, which included Ally's third payment to Gutierrez. Ally's third payment to Gutierrez under the 2009 award letter after it expressed its intention to enforce the non-solicitation covenant and after Gutierrez voluntarily resigned was inconsistent with the terms of the CIP and was more than a ministerial act. *See Tenneco*, 925 S.W.2d at 643–44 (holding complaining parties waived right to enforce contract when they knew of opponent's breach and "elected not to enforce any [contractual] rights" for three years). Ally has failed to raise a genuine issue of material fact in response to these conclusively established facts. Therefore, the trial court correctly granted summary judgment in Homeward and Gutierrez's favor on Ally's claims based on the affirmative defense of waiver.

### 3. Unreasonable

Even if Ally had not waived its right to seek enforcement of the CIP based on its intentional actions inconsistent with enforcement of the CIP, the non-solicitation covenant was unreasonable in scope and, thus, unenforceable.[7] An

---

[7]Before addressing reasonableness of a non-solicitation covenant, it must first be determined that the covenant is part of an otherwise valid agreement and that the covenant is ancillary to that agreement. *See Marsh*, 354 S.W.3d at 773–75. No party argues that these two requirements were not met.

18

enforceable non-solicitation covenant will contain reasonable limitations as to time, geographical area, and scope of activity to be restrained. Tex. Bus. & Com. Code Ann. § 15.50(a). Further, a non-solicitation covenant is unreasonable if it is greater than required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted. *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 660 (Tex. App.—Dallas 1992, no writ).

Here, the non-solicitation covenant barred Gutierrez, for a two-year period, from soliciting or employing (1) all Ally employees who work for Ally or any of Ally's subsidiaries and (2) all former Ally employees who worked for Ally or any of Ally's subsidiaries between August 14 and October 14, 2011. While it might be considered reasonable to limit Gutierrez's solicitation of Ally's employees located in the IT department, which was where Gutierrez worked, the non-solicitation covenant in the CIP was not so limited. Gutierrez was barred for two years from soliciting or employing both all current Ally employees and all former Ally employees who were so employed in late 2011. The undisputed summary-judgment evidence showed that in 2012, Ally had approximately 14,000 employees located across the nation, with some located in foreign countries. These 14,000 employees were included in the scope of Ally's non-solicitation covenant. This covenant goes beyond what was necessary to protect Ally's goodwill or other business interest of Ally. *See Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 386–88 (Tex. 1991) (holding covenant not to compete that included "any of [the employer's] clients worldwide, not just those with whom

19

Haas had some actual contact," unenforceable as overly broad and oppressive); *McNeilus Cos., Inc. v. Sams*, 971 S.W.2d 507, 510–11 (Tex. App.—Dallas 1997, no pet.) (holding covenant not to compete "in any capacity" for employer's competitors unenforceable as unreasonably broad in scope); *cf. Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 289–90 (5th Cir. 2012) (holding non-compete covenant enforceable because covenant limited to "accounts [employees] worked while employed"); *Am. Express Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 692–93 (N.D. Tex. 1996) (holding non-compete covenant enforceable under section 15.50 because covenant specified one-year duration and only limited defendant from contacting customers he served while working for plaintiff). Thus, the trial court correctly granted summary judgment on Gutierrez and Homeward's argument that the covenant was not enforceable.

### 4. Tortious Interference with Employment Relations

To the extent Ally's claim raising tortious interference with its employment relations does not arise solely from Gutierrez's obligations under the CIP as Ally's other claims do, we separately address this claim.[8] Homeward and Gutierrez argued in the trial court that they conclusively negated that there was

---

[8]Ally does not clearly argue that this tort is independent of Gutierrez's non-solicitation covenant with Ally and, in fact, asserts that Gutierrez's actions were tortious because she "deliberately tried to circumvent her Agreement with Ally." To the extent Ally's claim likewise rests on the unenforceable covenants in the CIP, it was appropriately dismissed as discussed above. We merely address this claim in an abundance of caution and do not hold that Ally's claim is a claim separate from its other contractually based claims.

any interference and also raised the affirmative defense of legal justification in response to this claim. *See Kipp v. LTV Aerospace & Defense*, 838 F. Supp. 289, 295 (N.D. Tex. 1993) (recognizing defense of legal justification to claim for tortious interference with employment relations); *see also Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77–78 (Tex. 2000) (applying affirmative defense of justification to claim for tortious interference with an existing contract).

First, Homeward was correct that it could not have interfered with Ally's continued employment of Beasley, Weiss, Bolling, Webb, Travis, Mitchell, Biddle, or Coffey: "[A] claim of tortious interference cannot be premised merely on the hiring of an at-will employee, without more." *Lazer Spot, Inc. v. Hiring Partners, Inc.*, 387 S.W.3d 40, 53 (Tex. App.—Texarkana 2012, pet. denied). It was undisputed that Homeward did not ask Gutierrez to recruit Ally employees. To hold Homeward liable for tortious interference for merely hiring Ally employees would "grind to a halt . . . the economy in the State of Texas." *Id.* at 53 n.23.

Second, it was undisputed that Beasley, Biddle, and Coffey never spoke with Gutierrez before leaving Ally to work for Homeward. Thus, Gutierrez conclusively negated an essential element of tortious interference, namely, that Gutierrez actually caused Beasley, Biddle, or Coffey to leave their employment with Ally. *See Diesel Injection Sales & Servs., Inc. v. Renfro*, 656 S.W.2d 568, 573 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e); *Custom Drapery Co. v.*

21

*Hardwick*, 531 S.W.2d 160, 166 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ).

Finally, Gutierrez conclusively proved the affirmative defense of justification as to Weiss, Bolling, Webb, Travis, and Mitchell. Because the non-solicitation covenant was either waived or unenforceable as overly broad, nothing prevented Gutierrez from lawfully contacting these employees regarding possible employment at Homeward. *See Lazer Spot*, 387 S.W.3d at 53 (holding mere hiring of another's at-will employee legally insufficient to prove tortious interference); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 691 (Tex. 1989) (stating elements of affirmative defense). *See generally* Restatement (Second) of Torts § 768(2) cmt. i (1979) (explaining contracts terminable at will are not breached by voluntary termination; therefore, a competitor "may offer better contract terms, as by offering an employee of the plaintiff more money to work for him . . . and he may make use of persuasion or other suitable means, all without liability"). Gutierrez conclusively established that she had a bona fide right to contact Weiss, Bolling, Webb, Travis, and Mitchell about employment with Homeward. Ally failed to raise a genuine issue as to any material fact regarding Gutierrez's affirmative defense once the burden shifted; thus, the trial court correctly granted summary judgment on this claim.

22

## B. Scope and Timing of Summary Judgment

### 1. Inclusion of All Claims

Ally asserts that the trial court erred by granting summary judgment on all of its claims because Homeward and Gutierrez failed to move for judgment as a matter of law on Ally's claim for unfair competition against Homeward and Gutierrez and on its claims for misappropriation of trade secrets against Gutierrez. In their motion for summary judgment, Homeward and Gutierrez argued that a conclusion that the non-solicitation covenant was not enforceable "disposes of all of Ally's claims . . . [b]ecause all of Ally's claims against Gutierrez and Homeward are based on Gutierrez's alleged violation of the non-solicitation [covenant]."

A trial court cannot grant summary judgment on a cause of action not addressed in the summary-judgment motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002); *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983). *See generally* Tex. R. Civ. P. 166a(c). But Ally's unfair-competition and misappropriation-of-trade-secrets claims were based on Gutierrez's actions that allegedly were in breach of the CIP, specifically the non-solicitation covenant. Further, any damages Ally suffered based on Gutierrez's post-resignation actions would be derived from the obligations in the CIP and Gutierrez's alleged breach of those obligations.[9] As such, Ally's claims sound

---

[9]In pleading each claim, Ally incorporated the facts regarding Gutierrez's actions that Ally alleged were in violation of the non-solicitation covenant.

23

only in contract. *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). Indeed, both unfair-competition and misappropriation-of-trade-secrets claims require evidence that "the trade secret was acquired through a breach of a confidential relationship," which could not occur in this case apart from Gutierrez's alleged breach of a contractual provision. *Parker Barber & Beauty Supply, Inc. v. The Wella Corp.*, No. 03-04-00623-CV, 2006 WL 2918571, at *14 (Tex. App.—Austin Oct. 11, 2006, no pet.) (mem. op.). Because Ally's claims are contractual, the trial court's implicit conclusion that Ally waived its right to enforce the non-solicitation covenant or, alternatively, that the non-solicitation covenant was unenforceable because it was overly broad in scope, necessarily disposed of Ally's contractual claims for unfair competition and misappropriation of trade secrets, as argued by Homeward and Gutierrez in their summary-judgment motion. The trial court did not err by granting summary judgment on all of Ally's claims.

### 2. Need for Additional Discovery

Ally argues that the summary judgment was premature because the trial court did not allow Ally to conduct additional discovery regarding Gutierrez's alleged spoliation of evidence and because it was not able to take the deposition of Homeward's representative. Ally points out that after it sent the demand letter to Gutierrez, Gutierrez "deleted several emails . . . that she had received from former Ally employees" after changing her email address to prevent "Ally

24

employees from contacting her about employment with Homeward." Gutierrez was able to recover "almost all of the emails" and produced them to Ally during discovery. Based on Gutierrez's actions, Ally asserts that it is entitled to a spoliation presumption, which "prevents a granting of summary judgment."

First, Ally's spoliation argument applied solely to Gutierrez's alleged violation of the non-solicitation covenant and the fact that the spoliation presumption raised a genuine issue of material fact as to whether she violated the covenant. Because we have determined that the non-solicitation covenant was unenforceable based on Ally's waiver and, alternatively, based on the overbroad scope of the covenant, Gutierrez's violation of the covenant is not an issue. The deleted emails did not affect waiver or enforceability; thus, the summary judgment was justified on grounds unaffected by the allegedly spoliated evidence, which removes it from the purview of the spoliation presumption. *See Mangham v. YMCA of Austin, Tex.-Hays Cmtys.*, 408 S.W.3d 923, 930–31 (Tex. App.—Austin 2013, no pet.) ("[W]e are not inclined to presume the trial court considered and rejected a spoliation argument in every grant of summary judgment, as this would ignore the possibility that the summary judgment was justified on grounds or in reliance on elements unaffected by the allegedly spoliated evidence."); *see also Ham v. Equity Residential Prop. Mgmt. Servs. Corp.*, 315 S.W.3d 627, 634–35 (Tex. App.—Dallas 2010, pet. denied) (affirming summary judgment because spoliated evidence was cumulative and not relevant to issue upon which summary judgment granted).

Second, Ally failed to properly request additional time for discovery. *See* Tex. R. Civ. P. 166a(g). In its response to Homeward and Gutierrez's motion for summary judgment, Ally asserted that it "has not been permitted to take Homeward's deposition" but averred that it had "filed for review of objections to Homeward's deposition which is currently pending review by the [trial] [c]ourt." The clerk's record does not contain these objections. *See* Tex. R. App. P. 34.5. Be that as it may, Ally was required to file either an affidavit explaining the need for further discovery or a verified motion for continuance. *See Tenneco*, 925 S.W.2d at 647; *see also Elizondo v. Krist*, 56 Tex. Sup. Ct. J. 1074, 2013 WL 4608558, at *7 & n.27 (Aug. 30, 2013). Neither Ally's objections nor its reference to the lack of discovery in its summary-judgment response are sufficient to render the summary judgment premature based on Ally's lack of "affidavit facts essential to justify [its] opposition" to Homeward and Gutierrez's summary judgment. Tex. R. Civ. P. 166a(g).

## IV. CONCLUSION

Because Homeward and Gutierrez conclusively established under Texas law that Ally waived enforcement of the non-solicitation covenant and because Ally failed to raise a genuine issue as to any material fact regarding waiver, the trial court correctly granted summary judgment on Ally's claims seeking a remedy for Gutierrez's actions that allegedly violated the non-solicitation covenant. Alternatively, because Gutierrez and Homeward conclusively negated an essential element of Ally's causes of action by proffering undisputed evidence

26

that the non-solicitation covenant was unenforceable as overly broad in scope, the trial court correctly granted summary judgment.  We overrule Ally's issue and affirm the trial court's judgment.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

DELIVERED:  January 23, 2014